911 F.2d 22
 53 Fair Empl.Prac.Cas. 973,
55 Empl. Prac. Dec. P 40,381,
5 Indiv.Empl.Rts.Cas. 1429
Melody PERKINS, Appellant,
v.
Thomas S. SPIVEY, Appellee.
Melody PERKINS, Appellant,
v.
GENERAL MOTORS CORPORATION OF AMERICA, Appellee.
Melody PERKINS, Appellant,
v.
GENERAL MOTORS CORPORATION OF AMERICA, Appellee.
Melody PERKINS, Appellee,
v.
Thomas S. SPIVEY, Appellant.
 Nos. 89-1833WM, 89-2136WM, 89-2137WM.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1990.
Decided July 24, 1990.
Rehearing and Rehearing En Banc Denied Aug. 29 and Aug. 31, 1990.
 
 Gwen G. Caranchini, Kansas City, Mo., for appellant.
 Michael J. Gallagher, Kansas City, for appellee Spivey.
 Paul Scott Kelly, Jr., Kansas City, for appellee General Motors Corp. of America.
 Before JOHN R. GIBSON and MAGILL, Circuit Judges, and DUMBAULD,* Senior District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 In these consolidated appeals, Melody Perkins challenges two orders of Judge Bartlett[1] and one order of Chief Judge Wright.[2] First, Perkins appeals Judge Bartlett's entry of summary judgment in favor of her employer, General Motors (GM), on her claim that GM breached its duty under Kansas common law to maintain a workplace free from sexual harassment. She alleges that GM negligently hired and retained employees, including a superintendent, who physically and/or psychologically assaulted her over a period of several years.[3] On appeal, she argues that Judge Bartlett erred (1) in finding that GM owed no common law duty to prevent sexual harassment in the workplace, and (2) in alternatively finding that she assumed the risk of harm. We affirm Judge Bartlett's entry of summary judgment to the extent that he found Kansas common law does not impose a duty on GM to provide a workplace free from the purely psychological harms of sexual harassment. However, we reverse the entry of summary judgment in favor of GM insofar as Perkins alleges that her emotional harm was accompanied by or resulted in physical injuries, and remand for further proceedings consistent with this opinion.
 
 
 2
 Second, Perkins appeals Judge Bartlett's entry of judgment following a thirty-day bench trial on her claim that GM violated Title VII. 709 F.Supp. 1487. At the conclusion of the trial, Judge Bartlett rejected as not credible her allegations of sexual assault and harassment. Three months later he issued his formal findings of fact and conclusions of law. On appeal, Perkins argues that Judge Bartlett erred when he denied her motion for recusal, which she filed nearly three months after the conclusion of the bench trial. Because we find that Judge Bartlett did not abuse his discretion when he denied her motion to recuse, we affirm his entry of judgment in favor of GM on Perkins' Title VII claim.
 
 
 3
 Perkins also appeals Chief Judge Wright's entry of summary judgment in favor of GM superintendent, Thomas Spivey, on her claim that Spivey was liable for battery, assault and intentional infliction of emotional distress. In granting Spivey's motion for summary judgment, Chief Judge Wright found that because of Judge Bartlett's factual findings, Perkins was collaterally estopped from relitigating whether Spivey had psychologically and physically attacked her. On appeal, Perkins argues that Chief Judge Wright erred in granting summary judgment in favor of Spivey on collateral estoppel grounds, and, in so doing, denied her right to a jury trial on her claim against Spivey. We affirm.
 
 
 4
 Finally, in his cross-appeal, Spivey argues that Chief Judge Wright erred when he refused to impose sanctions against Perkins and her attorney. We affirm.
 
 I.
 
 5
 On July 24, 1978, GM hired Perkins as a sixth-level production supervisor in the body shop of its plant in Kansas City, Kansas. With a few exceptions,[4] her employment at this plant continued uninterrupted until January 1986 when she filed a charge with the Equal Employment Opportunity Commission (EEOC) and a claim for workers' compensation. Perkins alleged that while employed at the plant, she was subjected to sexual harassment. She testified that several GM employees told sexual jokes, and directed leering gestures and catcalls toward her and other women. She testified that despite her complaints, lodged early in her employment at the plant, the harassment grew worse and she gradually became immune to the conduct.
 
 
 6
 Perkins further alleged that Spivey, superintendent of the body shop and/or acting general superintendent at the plant, raped her at least twice a month during much of the time she worked at the plant. The alleged rapes occurred at places other than the plant. She maintains that Spivey accomplished these rapes by threatening her with death or termination of employment and, on several occasions, by brandishing a knife or gun at her.
 
 
 7
 Perkins filed three separate suits. In the first suit, filed in federal court on May 27, 1986, she alleged that GM breached its Kansas common law duty to maintain a safe workplace free from sexual harassment by negligently hiring and retaining various employees whom GM knew or should have known would physically and/or psychologically injure her. After receiving her notice of right to sue from the EEOC, Perkins filed her second suit in federal court on May 29, 1986, alleging that GM had violated Title VII. Shortly thereafter, however, the negligence and Title VII claims were consolidated for discovery and trial. On October 28, 1988, Judge Bartlett granted GM's motion for summary judgment on Perkins' negligence claim, finding that no duty existed under Kansas common law for employers to provide a workplace free from sexual harassment. In the alternative, Judge Bartlett found that even if such a duty did exist, Perkins had assumed the risk of harm through her conduct.
 
 
 8
 The bench trial on Perkins' Title VII claim commenced on November 1, 1988. Three weeks later, Judge Bartlett informed the parties that his law clerk had just accepted employment to commence at the conclusion of her clerkship with a law firm occasionally retained by GM, but not involved in the case. Although Judge Bartlett offered to remove his law clerk from the case, counsel for both parties stated they had no objection to her continued participation.
 
 
 9
 On January 11, 1989, after a thirty-day bench trial, Judge Bartlett ruled in favor of GM on Perkins' Title VII claim. Formal entry of judgment was deferred pending consideration of proposed findings of fact and conclusions of law, which were ultimately issued on April 10, 1989. Judge Bartlett rejected as not credible Perkins' claims of sexual harassment and assault by Spivey and other employees. He also found that Perkins participated in a consensual relationship with Spivey in the hope of advancing her career and that her allegations of threats and violence were the result of a fertile and twisted imagination. He also found Perkins' allegation that the plant environment was sexually hostile to be more creative than factual. He found that she not only generally encouraged and welcomed such conduct but was an active and encouraging participant in the sexually explicit conversations. On the few occasions when Perkins did lodge a complaint, either the conduct ceased immediately or GM dealt with it appropriately. Perkins v. General Motors, 709 F.Supp. 1487, 1488-98 (W.D.Mo.1989) (findings of fact, conclusions of law and order granting judgment for GM). Perkins does not challenge these factual findings on appeal as clearly erroneous.
 
 
 10
 On February 9, 1989, nearly one month after the bench ruling, partners in the firm of Gage & Tucker, which represented GM in the Title VII action, and partners in the firm of Lathrop, Koontz & Norquist, were informed for the first time that their management committees were engaged in preliminary discussions concerning the possibility of a merger between the firms.[5] Judge Bartlett's wife, a labor attorney, was a partner in the firm of Lathrop, Koontz & Norquist. On April 3, 1989, Perkins filed a motion requesting Judge Bartlett recuse himself on three grounds: (1) the preliminary merger discussions between his wife's firm and Gage & Tucker; (2) the future employment of his law clerk with a firm which occasionally represents GM; and (3) his wife's position as a labor attorney. In rejecting Perkins' motion for recusal, Judge Bartlett found in part that her motion "was a last ditch, desperate attempt to delay the issuance of findings and conclusions in [the Title VII] case until after [Perkins'] case against Thomas Spivey [could] be tried in another division of this court." Perkins v. General Motors, 129 F.R.D. 655, 672 (W.D.Mo.1989) (order denying Perkins' motion to recuse).
 
 
 11
 In that case, filed originally in Missouri state court on May 29, 1986, Perkins alleged that Spivey assaulted, battered, and engaged in outrageous conduct against her. GM and Perkins conducted an extensive amount of discovery on her two claims against GM throughout most of 1987. With only a few exceptions, the depositions were not cross-noticed in the state and federal actions, and Spivey's counsel did not attend depositions in the federal case against GM. Furthermore, Perkins sought and obtained a protective order from the Missouri state court restricting Spivey from disclosing her medical and psychiatric records to GM, in order to prevent GM from using them against her in either the Title VII or negligence actions. Perkins' counsel subsequently wrote a letter to counsel for Spivey and GM warning them that violation of the state court order restricting disclosure of Perkins' medical records would force her to take strong steps. Finally, on numerous occasions, Perkins stated that no new parties would be added in the federal case against GM.
 
 
 12
 On November 27, 1987, Perkins moved to join her claim against Spivey with the negligence and Title VII claims asserted against GM which were pending in federal court. Judge Bartlett denied her motion citing undue delay and prejudice to GM and Spivey. He then ordered that no further discovery be allowed without leave of court on her claims against GM, finding that the amount of discovery was out of proportion to the claims asserted in the case.
 
 
 13
 On March 10, 1988, after successfully moving to dismiss her state court action against Spivey without prejudice, Perkins refiled her claim against Spivey in federal court. On April 10, 1989, Judge Bartlett issued his formal findings of fact in the Title VII action. On April 19, 1989, Chief Judge Wright granted Spivey's motion for summary judgment on the basis of the collateral estoppel effect of Judge Bartlett's findings. Perkins v. Spivey, No. 88-0213-CV-W-5 (W.D.Mo. Apr. 19, 1989).
 
 II.
 
 14
 In order to best resolve the numerous issues raised by Perkins, we will first examine whether Judge Bartlett properly granted GM's motion for summary judgment on Perkins' common law claim of negligence. Second, we will determine whether Judge Bartlett committed reversible error during the course of the Title VII suit against GM when he refused to recuse himself.[6] Third, we will examine whether Judge Bartlett abused his discretion in refusing to grant Perkins' motion for leave to join her action against Spivey to her GM claims.[7] Finally, we will examine Spivey's claim that Chief Judge Wright erred when he refused to impose sanctions on Perkins and her attorney.
 
 A.
 
 15
 Perkins first argues that Judge Bartlett erred when he granted GM's motion for summary judgment on her negligence claim. In granting summary judgment, Judge Bartlett found that no duty exists under Kansas common law which requires GM to provide a workplace free of sexually offensive conduct. In the alternative, he held that even if such a duty exists, Perkins assumed the risk as a matter of law because she voluntarily returned to the Kansas plant in 1982 with the full knowledge of the alleged sexual harassment.
 
 
 16
 Our review of a grant of summary judgment is governed by the same standard used by the court below. The entry of summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir.1986). In reviewing the validity of Judge Bartlett's decision to grant GM's motion for summary judgment, we review the facts and the inferences reasonably drawn therefrom in the light most favorable to Perkins. Id.
 
 
 17
 GM first argues that an employer has no duty under Kansas common law to provide a workplace free from sexual harassment. We agree, but only in part. In EEOC v. General Motors Corp., 713 F.Supp. 1394 (D.Kan.1989), the court confronted one of the issues raised by Perkins. The plaintiff-employee brought suit against GM alleging negligence and intentional infliction of emotional distress stemming from a coemployee's alleged sexual harassment. The employee argued that GM breached its common law duty to provide a workplace "free of sexual assault, harassment, intimidations and advances of a verbal and physical nature." Id. at 1396. The district court, in a well-reasoned opinion, held that Kansas common law does not impose upon an employer a duty to provide a workplace free from sexual harassment. Id.
 
 
 18
 We defer to the state law rulings of federal district courts which sit in the state whose law is controlling. We may refuse to follow the federal district court ruling only if we find that it is " 'fundamentally deficient in analysis, without a reasonable basis, or contrary to reported state-court opinion.' " Pony Exp. Cab & Bus., Inc. v. Ward, 841 F.2d 207, 209 (8th Cir.1988) (per curiam) (quoting Economy Fire & Cas. Co. v. Tri-State Ins. Co., 827 F.2d 373, 375 (8th Cir.1987)). Because we do not find any of these conditions to exist, we adopt the Kansas district court's holding that Kansas common law does not impose a duty on its employers to provide a workplace free from sexual harassment.[8] In so doing, we note that we are obliged to apply, not amend, existing state law. Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C.Cir.1988).
 
 
 19
 However, as counsel for GM admitted in oral argument and as the court in EEOC v. General Motors explicitly noted, the lack of a Kansas common law duty to provide a workplace free from sexual harassment was based upon the district court's conclusion that the only injuries alleged were psychological, and not physical, in nature. EEOC v. General Motors, 713 F.Supp. at 1396 (citing Hoard v. Shawnee Mission Medical Ctr., 233 Kan. 267, 662 P.2d 1214, 1219-20 (1983)). The Kansas federal district court explained:
 
 
 20
 It appears from the relevant case law that the traditional application of the employer's common law duty to provide a safe work place was intended to protect employees from unsafe work places where they could suffer physical injury. At common law, the employer had a limited tort liability to its employees. Kansas case law exhibits a general concern for the physical safety of employees. [Plaintiff's] alleged injuries here were purely psychological. Generally, Kansas law does not allow recovery for emotional distress caused by negligence absent some bodily injury. Hoard v. Shawnee Mission Medical Center, 233 Kan. 267, 274, 662 P.2d 1214, 1219-20 (1983) (Kansas does not recognize the tort of negligent infliction of emotional distress absent bodily injury). This court is not at liberty to arbitrarily expand the common law of this state beyond those boundaries set by the Kansas Supreme Court. Since no authority exists to establish a cause of action for failure to provide a safe work place arising out of incidents of sexual harassment on the job, the court has no choice but to grant summary judgment in favor of GM on count III of [plaintiff's] complaint.
 
 
 21
 Id. (emphasis added) (citations omitted). Therefore, while GM does not have a duty under Kansas common law to maintain a workplace free from the psychological harm of sexual harassment, it does have a duty not to retain a superintendent it knows or should have known is emotionally harming his coemployees in such a manner that they suffer physical injuries. See id.; Hoard, 662 P.2d at 1219-20, 1223; Plains Resources Inc. v. Gable, 235 Kan. 580, 682 P.2d 653, 663, 665 (1984).
 
 
 22
 Perkins' claims against GM based upon the sexual harassment within the plant do not state a cause of action under Kansas common law. As Perkins concedes, the harassment was "offensive, bothersome, embarrassing, disgusting, shocking and infuriating ... [but she eventually became] immune" to the conduct. Such harms are purely psychological in nature and, therefore, Judge Bartlett properly granted GM's motion for summary judgment based on these claims.
 
 
 23
 However, Perkins also argues that she suffered both purely physical harm and emotional harm accompanied by physical injuries, when Spivey, taking advantage of his position as superintendent, raped her repeatedly over a period of several years. Perkins alleges that Spivey threatened her with termination, physical harm, and death if she did not submit. She claims that GM, through its managers, knew or should have known that Spivey was subjecting her to repeated rapes throughout the course of her employment with GM. She maintains GM was negligent because the company, despite its actual or constructive knowledge, continued to employ Spivey and failed to take any action against him, thereby subjecting her to his continued attacks. To this extent, Perkins' negligence claim is based upon both emotional harms, which are accompanied by or result in immediate physical injuries, and physical injury alone. Therefore, insofar as her claim was so based, the entry of summary judgment in favor of GM was improper. A cause of action does exist under Kansas common law when employers negligently hire or retain employees they know or should know are incompetent or dangerous when another employee is physically injured by the dangerous employee or is emotionally harmed such that immediate physical injury is the result. See Plains Resources, Inc., 682 P.2d at 665 (citing Restatement (Second) of Torts Sec. 909, comment b (1977)).
 
 
 24
 Because a duty does exist under Kansas common law, we must examine GM's argument that Perkins assumed the risk of physical harm by voluntarily returning to the Kansas City plant to continue her work. GM relies on the Kansas Supreme Court decision in Gabbard v. Sharp, 167 Kan. 354, 205 P.2d 960 (1949), to support its position that Perkins assumed this risk. In Gabbard, the plaintiff-employee, a waitress, was assaulted by a fellow employee who was alleged to be drunk and upset about his thwarted advances toward her. In her suit, the waitress also alleged that the employer knew of her assailant's disposition toward her and other women and his habits in and about the premises during the hours that she worked. She claimed that the employer owed her a duty to provide a safe workplace, which it neglected, thereby causing and contributing to her injuries. The Kansas Supreme Court held in part that because the waitress knew of her coemployee's propensity for violence, she assumed the risk of harm. Id. 205 P.2d at 964.
 
 
 25
 After a thorough review of Kansas law, we have found that this decision, published forty-one years ago, no longer represents, in significant part, the common law of Kansas. First, we note that Gabbard has not been cited favorably in thirty-three years. See, e.g., Murray v. Modoc State Bank, 181 Kan. 642, 313 P.2d 304, 311 (1957). Given the tremendous social changes since 1957 in the evolution of society's attitudes towards women and abuse, it is difficult to believe Kansas courts would continue to hold to such archaic views. See, e.g., Kan.Stat.Ann. Sec. 44-1001, et seq. (Kansas Acts Against Discrimination). More importantly, however, two recent Kansas Supreme Court cases directly conflict with the underlying holdings of Gabbard.
 
 
 26
 First, the Gabbard court stated that the waitress did not state a cause of action. The waitress claimed that because her employer negligently retained a coemployee known to have a vicious disposition, her employer was liable for injuries she suffered when her coemployee assaulted her. The reasoning behind the court's conclusion is that an assault is an intentional act which is not committed within the scope of one's employment. Gabbard, 205 P.2d at 963-64. The idea that an employer is not directly liable for negligently retaining an employee who assaults another person because an assault is not within the scope of employment has since been emphatically rejected in Kansas. In Plains Resources, Inc., the Kansas Supreme Court stated:
 
 
 27
 The negligent hiring and/or retention doctrine recognizes that an employer has a duty to use reasonable care in the selection and retention of employees. This duty requires that an employer hire and retain only safe and competent employees. An employer breaches this duty when it hires or retains employees that it knows or should know are incompetent. Liability exists under either of these doctrines relating to negligent hiring or retention despite the fact that the direct cause of injury to the injured person is the negligent or intentional acts of an employee acting outside the scope of his employment.
 
 
 28
 Plains Resources, Inc., 682 P.2d at 662 (emphasis added) (citation omitted) (distinguishing cause of action stemming from indirect liability, respondeat superior, and direct liability, negligent hiring and retention of incompetent employee; " '[i]n a respondeat superior action, it must be proved that the employee was acting within the course and scope of his employment and that he was negligent, which negligence was the proximate cause of the plaintiff's injuries. In a negligent hiring action, there is no need to prove that the employee's act was committed within the course and scope of employment.' ") (quoting 2 Am.Jur. Proof of Facts 2d, Negligent Hiring Sec. 3, p. 616); compare id. (employer directly liable for employees' assaults under doctrine of negligent hiring and retention) with Williams v. Community Drive-in Theater, Inc., 214 Kan. 359, 520 P.2d 1296, 1301-02 (1974) (employer not liable under doctrine of respondeat superior for employee's assault when not committed in furtherance of employer's interest). Therefore, one of the primary rationales underlying Gabbard has since been rejected by the Kansas Supreme Court.[9]
 
 
 29
 Second, the Gabbard court stated that if "an employee knows that another employee is incompetent, or habitually negligent, and continues his work without objection, and without being induced by his employer to believe that a change will be made or that his employment will be made less dangerous he assumes the risk and hazards, of which he has full and complete knowledge, incident to such employment." Gabbard, 205 P.2d at 964. Although we have no quarrel generally with the continued validity of this common law rule, we note that its application to the facts of Gabbard, which involved an intentional criminal act against a coemployee, does not survive in Kansas.
 
 
 30
 Under Kansas common law, the assumption of the risk doctrine is based upon a theory of implied contract whereby an employee impliedly contracts to assume both the ordinary and at times the extraordinary risks of employment. In Jackson v. City of Kansas City, 235 Kan. 278, 680 P.2d 877 (1984), the Kansas Supreme Court stated that:
 
 
 31
 'The doctrine of assumption of risk is still viable in Kansas though its application is limited to cases ... where a master-servant relationship is involved....
 
 
 32
 Assumption of risk, in the law of master and servant, is a phrase commonly used to describe a term or condition in the contract of employment, either express or implied from the circumstances of the employment, by which the employee agrees that certain dangers of injury, while he is engaged in the service for which he is hired, shall be at the risk of the employee. Assumption of risk generally bars recovery by an employee who knows of the danger in a situation but nevertheless voluntarily exposes himself to that danger....
 
 
 33
 [A]ssumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; ... it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs.'
 
 
 34
 Id. 680 P.2d at 897 (citations omitted) (quoting Borth v. Borth, 221 Kan. 494, 561 P.2d 408, 412-13 (1977)); see also id. 680 P.2d at 891 (" 'reduced to its last analysis, the doctrine of assumed risk must rest for its support upon the express or implied agreement of the employe [sic] that, knowing the danger to which he is exposed, he agrees to assume all responsibility for resulting injury' ") (quoting Blackmore v. Auer, 187 Kan. 434, 357 P.2d 765, 773 (1960)).
 
 
 35
 Despite the fact that the doctrine is based upon contract principles, GM asks us to find that under Kansas common law, Perkins assumed the risk of harm by entering into an implied contract under which she assumed the risk of an illegal act, namely rape. Given the state's strong policy against such violent acts, see Kan.Stat.Ann. Secs. 21-3301, 21-3502, we do not believe Kansas courts would sanction a contract, whether implied or express, with such an illegal subject matter. See, e.g., Southern American Ins. v. Gabbert-Jones, Inc., 13 Kan.App.2d 324, 769 P.2d 1194, 1198 (1989); cf. Wagstaff v. Peters, 203 Kan. 108, 453 P.2d 120, 126 (1969) (because contract never challenged as illegal, agreement valid). Therefore, we hold that Perkins did not, and could not, assume the risk of rape whatever her knowledge of the risk.
 
 
 36
 We conclude that while summary judgment was properly granted as to Perkins' claim that GM breached its common law duty to provide a workplace free from sexual harassment, it was not properly granted as to Perkins' claim that GM breached its common law duty by retaining Spivey. In Lytle v. Household Mfg., Inc., --- U.S. ----, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the Supreme Court refused "to accord collateral estoppel effect to a district court's determinations of issues common to equitable and legal claims where the court resolved the equitable claims first solely because it erroneously dismissed the legal claims." Id. 110 S.Ct. at 1338. Any other result, the Court explained, would infringe the plaintiff's seventh amendment right to a jury trial. Id. Perkins' claims against GM under Kansas common law and Title VII were consolidated for discovery and trial, and as such were pursued in the same action. Therefore, because the entry of summary judgment on behalf of GM was partially in error, Perkins is entitled to a jury trial on her erroneously dismissed claim notwithstanding the intervening bench trial on her equitable claim under Title VII.[10] As a result, we must remand to the district court for proceedings consistent with this opinion. If the district court finds that a genuine issue as to material fact exists as to Perkins' allegations against GM concerning its negligent retention of Spivey, then Perkins must be given a jury trial.
 
 B.
 
 37
 Perkins next argues that Judge Bartlett erred when he refused to recuse himself because (1) his law clerk who assisted in the case had accepted employment to commence at the conclusion of her clerkship with a law firm occasionally retained by GM but not involved in the Title VII case; (2) his wife specializes in labor law practice and attended portions of the trial; and (3) rumors surfaced nearly one month after the bench ruling that indicated the firm at which Judge Bartlett's wife was a partner was engaged in preliminary merger discussions with the firm representing GM in this case.
 
 
 38
 We review Judge Bartlett's decision declining to recuse himself only for abuse of discretion. Gray v. University of Arkansas, 883 F.2d 1394, 1398 (8th Cir.1989). Disqualification is appropriate only if the facts would provide an objective, knowledgeable member of the public with a reasonable basis for doubting a judge's impartiality. United States v. DeLuna, 763 F.2d 897, 907 (8th Cir.), cert. denied sub nom. Thomas v. United States, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). However, any grounds for recusal must be asserted promptly. Oglala Sioux Tribe v. Homestake Min. Co., 722 F.2d 1407, 1414 (8th Cir.1983). Perkins does not once argue that Judge Bartlett abused his discretion. She appears to urge upon us a de novo standard of review, forgetting that our inquiry is not merely whether we would have made the same decision as Judge Bartlett, but whether we believe that he abused his discretion.
 
 
 39
 We cannot say that Judge Bartlett abused his discretion based upon the record in this case. First, on November 21, 1988, Judge Bartlett disclosed to counsel for Perkins and GM that his law clerk had accepted an offer of employment with a law firm which occasionally represented GM. The judge asked both parties if they had any concerns about her continued participation in the case. Perkins responded, "No sir, I don't," and her counsel stated, "None whatsoever, Your Honor." Grounds for disqualification under 28 U.S.C. Sec. 455(a) may be waived after "full disclosure on the record." By electing to proceed and failing to seek Judge Bartlett's recusal, Perkins waived any such claim she might have had regarding the law clerk's future employment.
 
 
 40
 Second, Perkins' claim that Judge Bartlett should have recused himself because his wife was an attorney specializing in labor law and management is not only legally insufficient, but it was not asserted in a timely fashion. Merely because his wife is a labor attorney does not mean that Judge Bartlett must recuse himself from all labor cases. Otherwise, every judge married to an attorney would be forced to recuse himself or herself from every case involving matters in which the spouse specializes. In fact, a judge whose spouse is a general practitioner would have to recuse himself or herself in almost every case.
 
 
 41
 Furthermore, Judge Bartlett had been assigned to the Title VII case for over two years prior to Perkins' motion for recusal. During the interim, discovery had taken place, the pretrial orders had been issued, the negligence claim dismissed and a thirty-day bench trial held. If Perkins had wanted to seek Judge Bartlett's recusal on the basis of his wife's position as an attorney specializing in labor law, she should have asserted it before such a great expenditure of resources. Therefore, her motion was not asserted promptly. See Oglala Sioux Tribe, 722 F.2d at 1414.
 
 
 42
 Third, Judge Bartlett did not abuse his discretion when he refused to recuse himself on the basis of the preliminary merger discussions underway between the firm representing GM and the firm in which his wife was a partner. The discussions were merely preliminary. Therefore, his wife did not have a reasonable future interest in the firm representing GM. Second, the merger discussions did not begin and the judge and his wife did not learn about them until approximately one month after the judge had already ruled against Perkins. To that extent, there could be no conflict. Although the precise wording of the factual findings and conclusions of law had not yet been determined, Perkins had already lost and GM had won. The parties with the most significant interest in the precise wording of the findings were Perkins and Spivey because of the possible collateral estoppel effect on Perkins' subsequent claim against Spivey. Spivey was not represented by GM's law firm, Gage & Tucker.
 
 
 43
 Perkins also argues that Judge Bartlett should have recused himself because his wife was present in the courtroom on several occasions. The mere presence of his wife in the courtroom has no independent significance. Perkins' argument regarding the wife's presence is only relevant in the context of the merger and the specialization arguments. Because, as we have found, Judge Bartlett did not abuse his discretion in refusing to recuse himself because of his wife's labor and management specialization, he could not have abused his discretion merely because his wife observed some of the testimony in open court.[11] Furthermore, at the time his wife attended small portions of the trial, her firm had not even begun preliminary negotiations with Gage & Tucker. The announcement of the talks were made over one month later. Therefore, there could not have been a connection between her attendance and the discussions.
 
 C.
 
 44
 Perkins further argues that Chief Judge Wright's failure to join her legal claim against Spivey to her mixed legal and equitable claims against GM violated her right to a jury trial, because if they had been joined, the seventh amendment would have required that she receive a jury trial on her legal claims. The cases Perkins cites in support of her seventh amendment argument hold that where a single action involves both legal and equitable claims, the court must conduct a jury trial of the legal claims first. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Meeker v. Am. Ambassador Oil Corp., 375 U.S. 160, 84 S.Ct. 273, 11 L.Ed.2d 261 (1963) (per curiam). These cases are inapposite because Perkins' legal claim against Spivey was not joined in the same action with her equitable claim against GM. Because Perkins' seventh amendment claim hinges on whether Judge Bartlett abused his discretion when he refused to grant her motion for joinder, the claim necessarily fails unless we find Judge Bartlett in fact abused his discretion. See infra text at 34-36.
 
 
 45
 We review the district court's decision to grant or deny leave to amend for abuse of discretion. See Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir.1989). Leave to amend can be properly denied for several reasons, such as undue delay, bad faith or dilatory motive by the movant, undue prejudice to the opposing party, and futility of amendment. Id. Despite her allegations of error, Perkins does not even allege that Judge Bartlett abused his discretion. After a thorough review of the record, we hold that Judge Bartlett did not abuse his discretion when he refused to join Perkins' claim against Spivey to the same action with her claims against GM.
 
 
 46
 Perkins waited eighteen months after filing the federal and state cases before seeking leave to amend her complaint and join her claim against Spivey to her claims against GM. She finally admitted that her effort to join Spivey was motivated solely by a last minute change in strategy. However, she did not originally inform Judge Bartlett of her true motivations because, as she subsequently informed him, she did not believe he would appreciate her candor.
 
 
 47
 In denying her motion to join Spivey, Judge Bartlett found: (1) in light of the extensive discovery already conducted, most of it without Spivey's participation, it would be "contrary to the overall purposes of the federal rules to promote efficiency and cost saving in litigation to permit amendments that appear to run a very real risk of extensive additional discovery;" (2) joinder and amendment would unduly prejudice both GM and Spivey at trial, where evidence admissible against only one defendant would be heard by a single jury deciding both cases (i.e., Spivey would be prejudiced by alleged misconduct of other GM employees and GM by alleged threats and assaults not made on GM premises); and (3) because Perkins asserted no single claim against both GM and Spivey, there was a good chance that even if joinder were granted, separate trials would be ordered to avoid prejudice and confusion. Perkins v. Spivey, No. 88-0213-CV-W-5, slip op. at 5-6 (W.D.Mo. June 9, 1988). We cannot find based upon this record that Judge Bartlett abused his discretion when he refused to permit joinder. Therefore, Judge Bartlett's valid ruling does not become erroneous merely because it has the incidental effect of precluding a jury trial on Perkins' claim against Spivey. See Fidelity & Deposit Co., 187 U.S. at 319-21, 23 S.Ct. at 121-22.
 
 
 48
 Because Judge Bartlett did not abuse his discretion, only two avenues are left to Perkins to challenge Chief Judge Wright's entry of summary judgment on her claim against Spivey. In examining these avenues, the first issue we must resolve is whether, apart from Perkins' right to a jury trial under the seventh amendment, Spivey, who was not a party to the prior judgment, may nevertheless use that judgment defensively to prevent Perkins from relitigating issues in the subsequent suit which were resolved against her in the earlier proceeding. The Supreme Court in Blonder-Tongue Lab, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), conclusively resolved this issue. The Court held that a party who had fully litigated a claim and lost in a prior action could be collaterally estopped from relitigating the same claim in a subsequent action against a different defendant unless the party did not have a full and fair opportunity to litigate her claim in the prior suit. Id. at 328-29, 91 S.Ct. at 1442-43. Not only did Perkins fully litigate her Title VII claim in front of Judge Bartlett, but Perkins conceded during oral argument that the ensuing findings of fact resolved all relevant factual disputes in her claim against Spivey. Because Perkins had a full and fair opportunity to litigate her claims of harassment and assault in her Title VII suit, she is collaterally estopped from relitigating these fact issues in her subsequent action against Spivey. Id.; see also Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 329-33, 99 S.Ct. 645, 650-52, 58 L.Ed.2d 552 (1979).
 
 
 49
 The issue which remains is whether the use of defensive collateral estoppel in this case violated Perkins' seventh amendment right to a jury trial. In Parklane, the Supreme Court stated:
 
 
 50
 The question that remains is whether, notwithstanding the law of collateral estoppel, the use of offensive collateral estoppel in this case would violate the petitioners' Seventh Amendment right to a jury trial.
 
 
 51
 '[T]he thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791.' At common law, a litigant was not entitled to have a jury determine issues that had been previously adjudicated by a chancellor in equity.
 
 
 52
 ....
 
 
 53
 Thus if, as we have held, the law of collateral estoppel forecloses the petitioners from relitigating the factual issues determined against them in the [equitable] action, nothing in the Seventh Amendment dictates a different result [if the subsequent action is at law], even though because of lack of mutuality there would have been no collateral estoppel in 1791.
 
 
 54
 Id. at 333, 337, 99 S.Ct. at 652, 655 (citations omitted). Parklane is fatal to Perkins' argument. The seventh amendment is not violated although Chief Judge Wright's entry of summary judgment on collateral estoppel grounds foreclosed Perkins from relitigating factual issues determined against her in the prior equitable action.
 
 
 55
 Perkins attempts to distinguish Parklane in several ways. First, Perkins argues she had a procedural avenue (jury trial) in the potential Spivey trial which was not available to her in the Title VII trial. This argument does no more than restate the issue and as such does not distinguish Parklane.
 
 
 56
 Second, Perkins argues that Parklane is inapposite because it involved the offensive use of collateral estoppel, while Spivey's case involved its defensive use. Her argument is without merit because the distinction is not relevant for purposes of her claim under the seventh amendment. The Court's holding in Parklane that the seventh amendment is not violated when a party is barred from relitigating the factual issues determined against it in a prior equitable action does not turn on whether collateral estoppel was used offensively or defensively. Because Judge Bartlett's ruling in the Title VII action was without error, his findings of fact preclude trial on Perkins' separate intentional tort claim.[12]
 
 D.
 
 57
 In his cross-appeal, Spivey argues that Chief Judge Wright erred when he refused to impose sanctions on Perkins and her attorney. In support of his argument, Spivey points to the following: (1) Perkins' continued prosecution of the Spivey claim after Judge Bartlett ruled against her on January 11, 1989; (2) Perkins' continued prosecution of the case against Spivey after formal findings were issued; and (3) misleading statements made to Chief Judge Wright. We review the factual findings under the clearly erroneous standard and the court's legal conclusion that the rule was not violated de novo. EEOC v. Milavetz & Assocs., 863 F.2d 613, 614 (8th Cir.1988).
 
 
 58
 28 U.S.C. Sec. 1927 provides for the imposition of costs and attorney's fees against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." The standard under Sec. 1927 and Rule 11 is whether the attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir.1987) (en banc).
 
 
 59
 In a well-reasoned opinion, Chief Judge Wright refused to impose sanctions, holding that: (1) he could not say that a reasonable attorney would conclude that Judge Bartlett's indication through his bench ruling of the probable final order to be issued, no matter the degree of certainty indicated, constituted final judgment for the purposes of collateral estoppel; (2) Perkins could not reasonably be expected at the January 11, 1989 hearing to hypothesize with absolute certainty the specific findings of April 10, 1989; and (3) he could not find that Perkins' actions between April 10, 1989 and April 19, 1989 were so unreasonable as to merit sanctions. After a thorough review of the record and the parties' arguments, we find no error.
 
 III.
 
 60
 In conclusion, we hold that Judge Bartlett properly granted GM's motion for summary judgment on Perkins' negligence claim based upon his finding that no duty exists under Kansas common law for an employer to provide a workplace free from sexual harassment. However, GM's motion for summary judgment was erroneously granted to the extent Perkins' negligent retention claim was based upon physical injury to Perkins and/or emotional harm accompanied by immediate physical injury. Therefore, we reverse on this one point alone, and remand for further proceedings consistent with this opinion. We further hold that Judge Bartlett did not abuse his discretion when he failed to recuse himself and when he denied Perkins' motion for leave to join her claim against Spivey to her claims against GM. Furthermore, we hold that Chief Judge Wright properly granted Spivey's motion for summary judgment based on the collateral estoppel effect of the findings made in the prior Title VII bench trial. Perkins' seventh amendment right to a jury trial on her legal claim against Spivey was not infringed. Finally, we hold that Chief Judge Wright properly denied Spivey's motion for sanctions.
 
 
 
 *
 THE HONORABLE EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri
 
 
 [2]
 The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri
 
 
 [3]
 Perkins v. General Motors, Nos. 86-0665-CV-W-9, 87-0048-CV-W-9, slip op. at 1-2, 1988 WL 125706 (W.D.Mo. Oct. 11, 1988) (order dismissing case No. 86-0665)
 
 
 [4]
 Perkins' employment was interrupted for periods of training, layoff, transfer, special assignment and disability. For example, on May 1, 1980, GM laid off Perkins. Several months later, she was hired at GM's plant in Bowling Green, Kentucky. She worked at this plant until laid off on February 28, 1982. Shortly before her layoff, Perkins and Spivey discussed the possibility of her returning to the Kansas City plant. In fact, Perkins initiated some of these discussions. With Perkins' encouragement, Spivey helped her return to the plant, effective May 10, 1982
 
 
 [5]
 No formal or informal agreement to merge was ever concluded and after the filing of this appeal, the law firms terminated negotiations
 
 
 [6]
 Perkins argues not only that we should reverse the judgment entered because Judge Bartlett refused to recuse himself, but that his refusal to do so infringed her seventh amendment right to a jury trial on her claims against Spivey. She argues that if Judge Bartlett had recused himself, his formal findings of fact and conclusions of law would never have been issued. Therefore, Chief Judge Wright would not have entered summary judgment on the basis of collateral estoppel and she would have received a jury trial on her claims against Spivey. Because we hold that Judge Bartlett did not abuse his discretion when he denied Perkins' motion to recuse, we need not reach her seventh amendment argument. It is well settled that an otherwise proper ruling is not erroneous merely because it has the incidental effect of precluding a jury trial. See, e.g., Fidelity & Deposit Co. of Md. v. United States, 187 U.S. 315, 319-21, 23 S.Ct. 120, 121-22, 47 L.Ed. 194 (1902) (summary judgment does not violate seventh amendment)
 
 
 [7]
 Perkins argues that the effect of Judge Bartlett's refusal to grant her motion for leave to join her action against Spivey to her claims against GM was to violate her seventh amendment right to a jury trial. She argues that if Spivey had been joined, her claims would have presented mixed legal and equitable issues. As a result, Perkins would have received a jury trial on her legal claim against Spivey before a bench trial on her Title VII claims against GM. Her seventh amendment argument therefore hinges on whether Judge Bartlett abused his discretion when he refused to grant Perkins' motion for leave to join her action against Spivey to her claims against GM. Because we hold that Judge Bartlett did not abuse his discretion, Perkins' claims against Spivey and GM properly remained independent causes of action. Therefore, under Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), discussed infra at 35-36, Chief Judge Wright's entry of summary judgment on the basis of collateral estoppel was proper and did not violate Perkins' seventh amendment right to a jury trial on her legal claim against Spivey
 
 
 [8]
 We note that Perkins' counsel does not attack, nor even discuss, the district court's holding in EEOC v. General Motors
 
 
 [9]
 The fact that the injured party in Plains Resources, Inc. was not another employee is irrelevant. The common law doctrine as developed in Kansas focuses on the direct liability of the employer for its negligence in hiring and retaining an unfit employee who harms another person. We find no case in which the identity of the person harmed is important. See generally Plains Resources, Inc., 682 P.2d at 661-67
 
 
 [10]
 GM argues that we cannot allow Perkins to raise a violation of her seventh amendment jury right on appeal because she pursued a trial strategy whereby she attempted, although unsuccessfully, to waive her right to a jury trial. We reject GM's argument. First, it was GM who prevented Perkins from waiving her right to a jury trial by objecting to Perkins' attempted waiver. To that extent, GM pursued a trial strategy of seeking a jury trial. Under GM's own argument, it should not be allowed to complain because it will now get exactly what it had originally sought, a jury trial by objecting to Perkins' attempted waiver. Second, Perkins correctly claims and GM admits that the waiver of her jury trial right was never accepted. Therefore, it was not effectively waived
 
 
 [11]
 Perkins' claim that Judge Bartlett schemed to subvert her claim against Spivey by refusing to recuse himself is frivolous and without any basis whatsoever. In fact, if anyone schemed, it was Perkins' counsel whose apparent motivation behind filing the motion to recuse was to delay Judge Bartlett's completion of the findings of fact until after Perkins' jury trial against Spivey. Perkins v. General Motors, 709 F.Supp. 1487, 1489-90 (W.D.Mo.1989) (order denying Perkins' motion for recusal)
 
 
 [12]
 Perkins argues that Lytle v. Household Mfg., Inc., --- U.S. ----, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), requires a different result. We disagree. First, Lytle does not overrule Parklane but cites it favorably. See id. 110 S.Ct. at 1334, 1336, 1337. Second, the holding of Lytle is limited to a case where the party brought both equitable and legal claims in the same action, but the district court erroneously dismissed the legal claim. Id. at 1334. In the case at bar, the legal and equitable claims were not brought in the same action and the district court properly refused to grant Perkins leave to join them. Therefore, Parklane controls, not Lytle
 Our affirmance of Chief Judge Wright's grant of Spivey's motion for summary judgment is based upon our finding that Chief Judge Wright properly relied upon Judge Bartlett's factual findings in the Title VII proceeding. Our affirmance should not be read as stating that we believe Judge Bartlett's findings were necessarily correct. We affirm on the basis of the procedural tool of collateral estoppel. Our partial reversal of Judge Bartlett's grant of GM's motion for summary judgment on Perkins' common law claims is based upon the seventh amendment. Our partial reversal should not be read as stating that we believe that Perkins' version of the facts was more credible.