INDIANA GAS CO., Southern Indiana Gas & Electric Co. (Both d/b/a Vectren Energy Delivery of Indiana, Inc.), Indiana Industrial Group, Citizens Action Coalition, Inc., Spencer County Citizens for Quality of Life, Valley Watch, Inc., Ohio Valley Gas Corp., Ohio Valley Gas, Inc., Sycamore Gas Co., Appellants,

v.

INDIANA FINANCE AUTHORITY, Indiana Gasification LLC, Indiana Office of Utility Consumer Counselor, Northern Indiana Public Service Co., Appellees

and

Lincolnland Economic Development Corp., Intervenor–Appellee.

No. 93S02–1306–EX–407.

Supreme Court of Indiana.

Aug. 14, 2013.

## ORDER

This appeal concerns a contract made between the Indiana Finance Authority and Indiana Gasification LLC for the sale of substitute natural gas. The Indiana Utility Regulatory Commission approved the contract pursuant to a 2009 statute, but several parties challenged that approval. Ultimately, parties on both sides of the controversy sought transfer, and we granted their petitions and assumed jurisdiction over the appeal. *Ind. Gas Co., Inc. v. Ind. Fin. Auth.*, 988 N.E.2d 797 (Ind.2013) (table); Ind. Appellate Rule 58(A).

Before me now is a motion, filed by some of the Appellants in this matter, requesting that I disqualify myself from participation in its resolution. The moving parties make two arguments in support of their request. First, they claim my personal friendship with Mark Lubbers, the Indiana Project Manager for the investment group seeking to build the coal gasification plant at the heart of this regulatory and legal controversy, casts doubt on my impartiality. Second, they assert I was "exposed" to "extrajudicial information" regarding the statute at issue in this case during my tenure as General Counsel for Governor Mitch Daniels. Motion at 10. I address each of these arguments in turn.

The test for recusal under Canon 3(C)(1) is "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *Tyson v. State*, 622 N.E.2d 457, 459 (Ind.1993) (citing *Perkins v. Spivey*, 911 F.2d 22 (8th Cir.1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991)). But as my colleague Justice Rucker noted in *In Re Wilkins*, this test cannot be based solely on that hypothetical reasonable person's assessment of the facts as reported or the allegations made in the public domain, without a fuller examination. 780 N.E.2d 842, 845 (Ind.2003) (framing the inquiry as "whether a reasonable person aware of all the circumstances would question the judge's impartiality." (quoting *In re Morton*, 770 N.E.2d 827, 831 (Ind.2002))). He also quoted with approval the Second Circuit Court of Appeals: "The test, as we have stated, is one of reasonableness, and the appearance of partiality portrayed in the media may be, at times, unreasonable." *Id.* at 846 n. 3 (quoting *In Re Aguinda*, 241 F.3d 194, 202 (2d Cir.2001)). Or as Justice Scalia put it, "the decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 914, 124 S.Ct. 1391, 158 L.Ed.2d 225 (2004) (citing *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000)). When those facts have satisfied this reasonableness test, I have not hesitated to recuse sua sponte.[1]

### Personal Friendship

The movants' first argument in favor of recusal is predicated on my personal

---

1. *See Richmond State Hosp. v. Brattain*, 961 N.E.2d 1010 (Ind.2012) (per curiam), *reh'g denied*, No. 49S02–1106–CV–327 (Ind. May 15, 2012) (Sullivan and Massa, JJ., not participating); *Davis v. Simon*, 987 N.E.2d 1093, 1094 (Ind.2013) (published order); *see also Rising Prop. Mgmt., LLP v. Dep't of Metro. Dev. Bd. of Zoning Appeals*, 967 N.E.2d 1034 (Ind.2012) (table); *Midwest Psychological Ctr., Inc. v. Ind. Dep't of Admin.*, 968 N.E.2d 232 (Ind.2012) (table); *State of Ind. Military Dep't v. Cont'l Elec. Co., Inc.*, 978 N.E.2d 27 (Ind.2012) (table); *State v. Bisard*, 980 N.E.2d 323 (Ind.2012) (table) (all denying transfer).

friendship with Mark Lubbers. The hypothetical objective person described in Canon 3(C)(1) must be aware of all the circumstances; thus, I take a moment now to lay them out.

I have known Mr. Lubbers for 28 years. He was my immediate supervisor when Governor Robert Orr hired me as a speechwriter in 1985, and I reported to him until he left the Governor's Office in 1987. We have remained friends through the years, though we have never regularly socialized or maintained frequent or regular contact. For the record, I have seen him twice since being sworn as a Justice of this Court, most recently for only a few minutes at an informal reunion picnic of Governor Orr's former staffers on May 24 of this year. We did not discuss the case before this Court at that time, nor have we ever discussed it.

As to Mr. Lubbers's connection to this case, he is not a party, and neither his liberty nor his assets are at stake. He is, according to the movants, "the Indiana Project Manager and senior Indiana employee" of Indiana Gasification. Motion at 1. He has testified on the project's behalf before legislative committees and commented on recent legislation pertaining to it. Associated Press, *Ind. coal-gas bill stalls CO2 pipeline project*, WISHTV.com, May 3, 2013, *www.wishtv.com/dpp/news/ politics/ind–coal–gas–bill–stalls–c02– pipeline–project*.

I found Justice Scalia's denial of a motion to recuse in *Cheney* particularly instructive here. It was alleged he could not decide that case impartially because he and Vice President Cheney—an actual party to the case—were friends and had gone on a hunting trip together with several other people. Justice Scalia made clear he never discussed the case with the Vice President and noted that "a rule that required Members of this Court to remove themselves from cases in which the official actions of friends were at issue would be utterly disabling." [2]  *Cheney*, 541 U.S. at 916, 124 S.Ct. 1391.

It would be equally disabling to this Court if we were required to recuse every time a "friend" came before us as a lawyer for a party or worked as an employee of, or consultant to, a party. I have a friend who works for General Motors; must I recuse if GM is a party to a case before our Court? All of us on this Court have many friends who are lawyers, some of whom appear before us, including several to whom I am closer and see more regularly than Mr. Lubbers. If mere friendship with these lawyers were enough to trigger disqualification, my colleagues and I would rarely sit as an intact court of five.

Much has been made of the fact that Mr. Lubbers spoke at my investiture ceremony on May 7, 2012, along with then-Governor Mitch Daniels and former Marion County Prosecutor Scott Newman. He said some flattering things, which can happen on such occasions. But this gesture cannot be a basis for recusal on a court of last resort.[3]

---

**2.** Justice Scalia opined that "friendship is a ground for recusal of a Justice where the personal fortune or the personal freedom of the friend is at issue," *Cheney*, 541 U.S. at 916, 124 S.Ct. 1391, but that is not the case here; as previously noted, neither Mr. Lubbers's freedom nor his fortune are at stake in this lawsuit.

**3.** For instance, Lafayette attorney Patricia Truitt and Martinsville attorney and State Representative Ralph Foley both spoke at the investiture of Chief Justice Dickson in August 2012. Likewise, Allen County Judge Charles Pratt presented and paid tribute to my colleague Justice Rush at her investiture in December 2012. No one would suggest that the Chief Justice recuse himself from a case in which Ms. Truitt or Mr. Foley represented

Finally, the movants claim that Mr. Lubbers hired me to work for Governor Orr in 1985 and imply he did the same when I joined the Daniels Administration in 2006. Conceding the first point for the sake of argument (although Governor Orr made the final hiring decision) and rejecting the second as false (again, Governor Daniels made the decision), neither is a basis for recusal. In recent years, our Court has been blessed with the services of Justices Boehm and Sullivan, who before taking the bench were hired at two of the state's leading law firms whose lawyers often appeared before our Court. Both Justices routinely heard appeals argued by lawyers from those firms without any suggestion of recusal. Nor is it unusual for us to hear cases argued by lawyers *we* hired as law clerks before they entered appellate practice.

### Extrajudicial Information

■ The movants also allege that I cannot hear this case because I once worked for Governor Daniels, a supporter of the project. But as Justice Boehm explained in *Peterson v. Borst*, 784 N.E.2d 934, 936 (Ind.2003), "all Justices on this Court were appointed by the Governor. In every case the appointing Governor has selected someone with at least some history of support for the Governor's political party." If this fact of life mandated recusal per se, I would have had to recuse from our decision in *Meredith v. Pence*, 984 N.E.2d 1213 (Ind.2013), the school voucher case, simply because the law upheld in that case was a Daniels initiative. I served as General Counsel to Governor Daniels from 2006 to 2010, but I had no conflict in the voucher case because I played no role in the development or passage of the legislation (indeed, I was serving not as General Coun-

sel but as Alcohol Commissioner when the bill passed in 2011). Likewise, I had no involvement in the negotiation of the contract between the Indiana Finance Authority and Indiana Gasification. I was not the Governor's counsel when the deal was struck in 2011 and thus had no involvement in it of any kind.

During my four-year tenure as General Counsel, I did oversee a team of lawyers who reviewed enacted legislation for constitutionality before the bills were presented to the Governor for signature. (Other policy aides provided more substantive review and advice.) Therefore, I would have reviewed the enabling legislation for that purpose, but I have no independent recollection of having done so, as Governor Daniels signed 757 separate pieces of legislation during my tenure.[4] Moreover, the constitutionality or wisdom of that enabling legislation, which merely authorized the IFA to solicit bids and enter into a contract with any qualifying coal gasification enterprise is not at issue in the case before the Court. The question is whether the *contract*, negotiated long after my departure from the Governor's office, comports with Indiana law. I had no involvement in the negotiation of that contract and thus have no conflict.

\*　　\*　　\*

When we take the bench, we assume a duty under the Canons to hear and decide cases and not to recuse "except when disqualification is required." Ind. Judicial Conduct Rule 2.7 (2009). Justice Boehm has said this is "a particularly powerful consideration for Justices of Supreme Courts, where there is no procedure to replace a recused Justice, and a recusal is in practical terms a vote for the party who

one of the parties, or that Justice Rush recuse herself from an appeal of one of Judge Pratt's rulings.

4. *See generally* 2006 Ind. Acts, 2007 Ind. Acts, 2008 Ind. Acts, 2009 Ind. Acts.

prevailed in the last court." *Peterson*, 784 N.E.2d at 935. The late Chief Justice Rehnquist made this point in more detail in *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972), when he wrote:

> While it can seldom be predicted with confidence at the time that a Justice addresses himself to the issue of disqualification whether or not the Court in a particular case will be closely divided, *the disqualification of one Justice of this Court raises the possibility of an affirmance of the judgment below by an equally divided Court.* The consequence attending such a result is, of course, that the principle of law presented by the case is left unsettled. The undesirability of such a disposition is obviously not a reason for refusing to disqualify oneself where in fact one deems himself disqualified, but I believe it is a reason for not "bending over backwards" in order to deem one's self disqualified.

*Id.* at 837–8, 93 S.Ct. 7 (emphasis added). Here, the moving parties can do the appellate math and know that in the event of my recusal, they would only have to convince two judges to prevail, leaving the Court split and winning the tie.[5] Thus, "even one unnecessary recusal impairs the functioning of the Court," *Cheney*, 541 U.S. at 916, 124 S.Ct. 1391 (quoting Press Release, U.S. Supreme Court, Statement of Recusal Policy (Nov. 1, 1993)), something I will not do in the absence of sufficient cause in a question of large public import. I there-fore will participate when this case is heard.

The Citizens Groups' Verified Motion for Judicial Disqualification is hereby DE-NIED. The clerk is directed to send copies of this order to all counsel of record.

---

5. *See* Ind. Appellate Rule 58(C) ("When the Supreme Court is evenly divided after transfer has been granted, the decision of the Court of Appeals shall be reinstated."). The opinion below, of course, reversed the IURC's approval of the contract, as the movants and the other Appellants requested. *Indiana Gas Co., Inc. v. Indiana Fin. Auth.*, 977 N.E.2d 981, 986 (Ind.Ct.App.2012) *transfer granted, opin-ion vacated*, 988 N.E.2d 797 (Ind.2013); *see also* The Harvard Crimson, Nov. 25, 1968 (Headline: "Harvard Beats Yale, 29–29"); Jin, Liyun and Dennis J. Zheng, *The Game Won Without Winning*, The Harvard Crimson, November 21, 2008, available at http://www.thecrimson.com/article/2008/11/21/the-game-won-without-winning-theodore/.