# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1040

_____

Igor DeCastro

*Plaintiff - Appellant*

v.

Hot Springs Neurology Clinic, P.A.; James Adams

*Defendant*s

James Arthur

*Defendant - Appellee*

Bank Ozk

*Defendant*

Hot Springs Neurosurgery Clinic, P.A.

*Defendant - Appellee*

_____

No. 23-1196

_____

Igor DeCastro

*Plaintiff - Appellant*

v.

Hot Springs Neurology Clinic, P.A.; James Adams

*Defendant*s

James Arthur

*Defendant - Appellee*

Bank Ozk

*Defendant*

Hot Springs Neurosurgery Clinic, P.A.

*Defendant - Appellee*
_____

No. 23-1657
_____

James Arthur

*Plaintiff - Appellee*

v.

Igor DeCastro

*Defendant - Appellant*
_____

Appeals from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: January 9, 2024
Filed: July 10, 2024
_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

What does it take to plead a breach-of-employment-contract claim? The district court concluded that it was more than we have here, a complaint filled with legal conclusions but few facts. We affirm the district court's decision to dismiss.

I.

For seven years, Dr. Igor DeCastro worked as a neurosurgeon at the Hot Springs Neurosurgery Clinic. After he left, he became convinced that he had not received what the clinic owed him. "[F]or the first 18 months," his pay was $650,000 per year. From then on, he was supposed to "receive the net proceeds of his production, less 33% of the overhead." But, according to the amended complaint, he "never received one dime more than his salary" because Dr. James Arthur, the clinic's owner, had stashed the money away in a "secret account." In other words, Arthur and the clinic had breached their employment agreement.

In the same lawsuit, DeCastro also sued Bank OZK, where the "secret account" was located. Rather than risk giving the disputed funds to the wrong party, the bank asked the district court[1] to decide who gets them. *See* Fed. R. Civ. P. 22(a)(2) ("A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim."). The court accepted the funds, placed them into a registry, and dismissed the bank as a defendant.

_____

[1]The Honorable Kristine G. Baker, then District Judge, now Chief Judge, United States District Court for the Eastern District of Arkansas.

The case moved quickly from there. The district court[2] first granted Arthur's motion to dismiss on the ground that the amended complaint had omitted "essential" facts. *See* Fed. R. Civ. P. 12(b)(6). It then asked the parties to weigh in on who should receive the funds, but only Arthur made a claim. DeCastro, for his part, just wanted to unwind the dismissal, so he filed a motion requesting reconsideration, discovery, and leave to file a second amended complaint. *See* Fed. R. Civ. P. 59(e).

The district court tried to bring an end to the case by disbursing the funds to Arthur and denying DeCastro's motion. Undeterred, DeCastro tried again, this time equipped with a copy of the agreement. *See* Fed. R. Civ. P. 60(b). His second attempt to revive the case, just like the first, was unsuccessful.

And so was DeCastro's third try, which involved filing a counterclaim in an unrelated contribution action Arthur had brought against him. The allegations of the counterclaim were identical to what DeCastro had alleged in his own lawsuit, so the district court relied on res judicata and dismissed it with prejudice.[3]

## II.

According to the district court, the problem was what DeCastro failed to put in his amended complaint. We review the grant of a motion to dismiss de novo under the now-familiar standard requiring a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

---

[2]The Honorable Susan O. Hickey, Chief Judge, United States District Court for the Western District of Arkansas.

[3]We are not concerned about manufactured appellate jurisdiction, even though the district court later allowed Arthur to voluntarily dismiss his contribution claims *without* prejudice. *See* Fed. R. Civ. P. 41(a)(2). DeCastro, not Arthur, is appealing, and even then, only the *with-prejudice* dismissal of his own counterclaim. *See Ruppert v. Principal Life Ins. Co.*, 705 F.3d 839, 843 (8th Cir. 2013) (explaining that a "final appealable decision" requires "*the appellant's* claims [to be] unequivocally dismissed with prejudice" (emphasis added)).

*Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[F]actual" matter does not include "labels . . . or a formulaic recitation of the elements of a cause of action," "naked assertion[s] of claims," or legal conclusions "couched as" facts. *Id.* (third alteration in original) (citation omitted).

DeCastro's amended complaint is flush with legal conclusions but short on facts. *See id.* Consider what it says about the alleged breach. It describes the basic terms of the agreement, including how the calculation was supposed to change after 18 months, but is silent about *how* Arthur and the clinic allegedly failed to uphold their end of the bargain. *See Ark. Dev. Fin. Auth. v. Wiley*, 611 S.W.3d 493, 498 (Ark. 2020) (listing "a violation by the defendant" as an element of a breach-of-contract claim); *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014) (noting that "we apply the substantive law of the forum state"—here, Arkansas—while "sitting in diversity"). There is nothing, for example, about how much DeCastro received. Nor is there anything about his "production" or the sum of the clinic's "overhead," which are the key components of the compensation formula that Arthur and the clinic allegedly failed to follow. All it says is that they "breached th[e] contract," which is a textbook legal conclusion. *See Iqbal*, 556 U.S. at 678.

To be sure, DeCastro alleged that he "never received one dime more than his salary." But this allegation is just as vague as the rest of his complaint. Is "his salary" the $650,000 in annual pay that the clinic initially promised him, or the proceeds of the net-production formula? The answer matters because if the clinic paid him what the agreement required (or even more), then there has been no breach *and* no damages. In short, is the claim even plausible?[4] *See* Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 679. Unfortunately, the amended complaint does not provide us with enough to know.

---

[4]The Seventh Amendment does not save DeCastro's case. It does not require a jury trial regardless of how deficient the pleadings are. *See, e.g.*, *Perkins v. Spivey*, 911 F.2d 22, 28 n.6 (8th Cir. 1990).

III.

Time to tie up some loose ends. The first one is DeCastro's suggestion that the district court should have opted for something less than an across-the-board dismissal. It was DeCastro's responsibility, however, to request a second opportunity to amend, and he did not do so until it was too late. *See Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1051 (8th Cir. 2010). And to the extent he believes he pleaded enough for a declaratory judgment and an equitable accounting, both depended on the sufficiency of his underlying claims. *See Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 687 F.3d 1076, 1081–82 (8th Cir. 2012) (describing "the declaratory judgment *remedy*" as "a judicial declaration of the parties' contractual rights and duties" (emphasis added)); *A & P's Hole-In-One, Inc. v. Moskop*, 832 S.W.2d 860, 863 (Ark. Ct. App. 1992) (explaining that "[a]n accounting is an equitable *remedy*" that might flow from a successful claim for breach of the "duty to account" (emphasis added)). Not to mention that if he really wanted an accounting, he should have made a claim on the interpleaded funds. *See United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (explaining that the "second stage" of an interpleader involves "determin[ing] the respective rights of the claimants to the fund[s] . . . at stake").

Second, DeCastro appeals from his numerous failed attempts to revive his lawsuit. Given our conclusion that the amended complaint did not state a claim, there was no abuse of discretion in denying his post-dismissal motion to alter or amend the judgment. *See* Fed. R. Civ. P. 59(e); *see also Pub. Water Supply Dist. No. 1 v. City of Springfield*, 52 F.4th 372, 375 (8th Cir. 2022). Nor was there reason to vacate the judgment, even though he eventually located and produced a copy of the employment agreement. *See* Fed. R. Civ. P. 60(b); *see also Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 843 (8th Cir. 2022) (noting that we review a denial of a Rule 60(b) motion "for a clear abuse of discretion" (citation omitted)). The agreement, as it turned out, was inconsistent with how he pleaded the case. It never mentions a $650,000 salary or the net proceeds of production, meaning it would have required DeCastro to come up with an entirely new theory after dismissal, which is

"[in]appropriate" for a Rule 60(b) motion. *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010); *see Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 373 (8th Cir. 1994) (affirming the denial of a Rule 60(b)(3) motion when the plaintiff "had a fair opportunity to discover [the evidence] simply by going through his own files").

The final loose end is DeCastro's counterclaim. *See Brown v. Kan. City Live, LLC*, 931 F.3d 712, 714 (8th Cir. 2019) (explaining that de novo review applies). Under Arkansas law, "a dismissal of a cause of action with prejudice is a final adjudication on the merits" entitled to res judicata effect. *Orr v. Hudson*, 374 S.W.3d 686, 691 (Ark. 2010); *see Daredevil, Inc. v. ZTE Corp.*, 1 F.4th 622, 627 (8th Cir. 2021) ("[W]hen a federal court, exercising diversity jurisdiction, renders the first judgment, then [a]s a matter of federal common law, we must give that federal diversity judgment the same claim-preclusive effect that [the forum's] state courts would give to a state court judgment." (second and third alterations in original) (citation omitted)). Having litigated the claim once before, he could not do so again in a different case. *See Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe*, 578 F.3d 753, 760 (8th Cir. 2009).

## IV.

We accordingly grant the motion to supplement the record and affirm the district court.

_____