Sean **THOMPSON–EL**, Appellant,

v.

Jimmy **JONES**, Superintendent; Dick Moore, Theresa Thornburg, Appellees.

No. 88–1968.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1989.

Decided June 1, 1989.

Jeffrey S. Kerr, St. Louis, Mo., for appellant.

Paul Rauschenbach, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Sean Thompson–El appeals following a grant of summary judgment in favor of defendants-appellees. Thompson–El claims that the United States Magistrate[1] erred prior to granting summary judgment by denying him leave to file a second amended complaint. We affirm.

I.

This case was initiated in October 1986 when Thompson–El filed a pro se complaint under 42 U.S.C. § 1983 (1982) against officials of the Missouri Training Center for Men (MTCM) in Moberly, Missouri. The next month Thompson–El amended his complaint, adding both defendants and claims, and the claims in his original complaint subsequently were dismissed. His amended complaint alleged *inter alia* that individuals associated with MTCM had violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Specifically, Thompson–El claimed that he was being held in administrative segregation without having received "a report of definite misconduct, without adequate access to the courts and without a meaningful ... investigation" into the incident that precipitated his confinement in administrative segregation. Appendix of Appellant (App.) at 14. He demanded that the investigation be concluded or that he be returned to the general prison population.

On December 29, 1987, Jeffrey S. Kerr was appointed as Thompson–El's counsel. Kerr entered his appearance on Thompson–

---

1. The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri, before whom the parties consented to trial. *See* 28 U.S.C. § 636(c) (1982).

El's behalf February 4, 1988. Around February 22 the trial court entered discovery deadlines and notified the parties that trial had been set for May 23, 1988. Thompson–El moved for a continuance March 3, 1988, stating that "a prior scheduling conflict render[ed] [his] counsel unavailable for trial" on the scheduled date and requesting that the trial be re-scheduled for "a later time to be determined by the Court." App. at 34. The continuance was granted and the trial re-scheduled for May 25, 1988.

Although Thompson–El's counsel was appointed in December 1987, he did not meet with Thompson–El to discuss the case until May 3, 1988. Prior to that, discussions between counsel and Thompson–El had been limited to brief telephone calls. On May 10, two weeks before the trial was to start, Thompson–El sought leave to file a second amended complaint, in which he named four more defendants, presented at least one new claim (that the Adjustment Board's December 18, 1986 proceedings finding Thompson–El guilty of involvement in an assault were unconstitutional), and added demands for actual and punitive damages. The motion for leave to amend was denied. Thereafter, defendants' motion for summary judgment, which argued *inter alia* that Thompson–El's claims were moot, was granted. The trial court agreed that the claims were moot, stating that "[b]ecause the investigation ... has been completed and the plaintiff has been transferred from MTCM to another institution, his claim for injunctive relief is moot," and "there is nothing in the complaint from which a request for monetary relief may be inferred." App. at 68. Judgment in favor

of defendants was entered, and Thompson–El appeals.

## II.

Federal Rule of Civil Procedure 15(a) governs a party's right to amend its pleadings. The Rule provides in pertinent part that leave of court to amend a complaint "shall be freely given when justice so requires." [2] As explained by the Supreme Court, absent a good reason for denial— such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment—leave to amend should be granted. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Amendment of pleadings is to be liberally allowed, but the trial court's decision whether to allow amendment will be reviewed only for an abuse of discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Having considered the circumstances surrounding the denial of Thompson–El's motion to amend, we find that there was good reason to deny the motion, and therefore cannot say that the trial court abused its discretion.[3]

The policy favoring liberal allowance of amendment does not mean that the right to amend is absolute. When a considerable amount of time has passed since the filing of a complaint and the motion to amend is made on the eve of trial and will cause prejudice and further delay, courts require the movant to provide some valid reason for the belatedness of the motion.

2. The full text of Rule 15(a) provides:
   (a) **Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the origi-

nal pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

3. The trial court's failure to articulate its reasons for denying the motion, contrary to what Thompson–El suggests, is not per se an abuse of discretion. *See, e.g., Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153–54 (5th Cir.1981). We reiterate, however, that as a matter of good practice a trial court should provide reasons for the denial of a motion to amend. *See Hannah v. City of Overland*, 795 F.2d 1385, 1392 (8th Cir.1986).

*See Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 933 (1st Cir. 1983); *see also Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 825–26 (8th Cir. April 19, 1989). Here the motion to amend was filed after the case had been pending for approximately eighteen months and just two weeks before the trial was to start. It was made almost six weeks after the date originally set for completion of discovery and two weeks after the deadline for summary judgment motions. Furthermore, grant of the motion most likely would have necessitated additional discovery and further delay. Indeed, Thompson–El moved to file discovery out of time and for a continuance the day before he filed the motion to amend, and in the motion for a continuance he indicated that to allow him adequate time to prepare for trial on the matters raised in his second amended complaint the court should set trial no earlier than August 1, 1988.

Thompson–El argues, of course, that the belatedness of his motion to amend should have been excused. He contends that it was "impossible for ... counsel to discover the need" for a second amended complaint until he and counsel met and received certain discovery materials. Brief for Appellant at 13–14. As noted above, however, counsel was appointed for Thompson–El in December 1987. The discovery materials were not requested until the first week of the following April and counsel and Thompson–El did not meet until the following May. Thompson–El provides no explanation for not requesting the discovery materials earlier, except to say the request was not late under the discovery schedule, and the failure to meet until May 3 he attributes to "counsel's scheduling conflicts and [his own] incarceration at [the Missouri State Penitentiary (MSP)], some four (4) hours away, one way, from counsel's of-

fices by automobile." [4] Brief for Appellant at 13. Suffice it to say that we find these explanations unimpressive.

Thompson–El also makes much of the fact that the complaint he was denied leave to amend, *i.e.,* his first amended complaint, was filed pro se. He argues that the "rules favoring liberality in amending pleadings are particularly crucial" here because the pro se litigant is more prone to make errors than is the litigant represented by counsel. Brief for Appellant at 12–13. In the circumstances of this case, however, we think that point provides little excuse. Because Thompson–El had been acting pro se, counsel should have realized that deficiencies in the pleadings were likely and, once he had an opportunity to become familiar with this case, should have filed the motion to amend promptly.

Defendants contend that Thompson–El's attorney simply did not want to go to trial in late May because of certain social engagements and his late-date maneuvering was an attempt to avoid having to do so. The record provides some support for this view. For example, in the May 9 motion for continuance (filed the day before the motion to amend), Thompson–El explained that the May 9 and March 3 continuances both were made because counsel planned to be "absent for ten (10) of the last fourteen (14) days immediately preceding the trial date" in order to participate in two out-of-town weddings. App. at 53–54.[5] Defendants argue in essence that, rather than seeking leave to file a second amended complaint in order to press legitimate claims, Thompson–El filed the motion in order to delay trial until a time more convenient for counsel. If a motion to amend is filed for dilatory purposes, a court has good reason to deny the motion. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230. On

---

**4.** Counsel's offices are in St. Louis, Missouri, and MSP is located approximately 130 miles away in Jefferson City, Missouri. Thompson–El was transferred from MTCM to MSP after the Adjustment Board found him guilty of involvement in an assault on a fellow MTCM inmate.

**5.** Had the March 3 motion for continuance been more artfully drafted, Thompson–El might then have received a continuance more to his liking.

As we noted earlier, however, Thompson–El simply stated in that motion that counsel would be unavailable May 23 and requested only that the trial not start that day but at "a later time to be determined by the Court." App. at 34. Apparently, no clarification of counsel's schedule or other request for a delayed trial date was presented to the trial court until May 9.

 

the facts of this case, we believe the trial court could well have concluded that the motion to amend was prompted by such motives.

Parties in litigation, as well as the courts, are entitled to expect opposing parties to prepare their cases in timely fashion. "Trial settings are to be taken seriously and discovery must be conducted [in such a way that the parties are prepared] for trial on the date scheduled...." *Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Prods.*, 542 F.2d 1010, 1013 (8th Cir.1976). In this case, it is clear that Thompson–El's pretrial preparation was approached with a marked lack of diligence: Thompson–El and counsel did not even meet until two weeks after defendants filed their motion for summary judgment. More importantly, the addition in the second amended complaint of four new defendants, a distinct claim, and demands for actual and punitive damages would have changed this case quite substantially. The additional burdens of discovery and delay the amendment would have placed on defendants we are unwilling to characterize as insignificant prejudice, especially in light of Thompson–El's inability to provide a valid excuse for his failure to act earlier. *See Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 20 (1st Cir.1979); *see also Mills*, 872 F.2d at 825–26; *Stepanischen*, 722 F.2d at 933. In the circumstances of this case, the trial court did not abuse its discretion in denying Thompson–El leave to file his second amended complaint.[6]

AFFIRMED.

6. Although the above discussion disposes of the issue before us, we add this brief comment. As we noted, this case stems from Thompson–El's confinement in administrative segregation. Thompson–El was placed in administrative segregation July 20, 1986 pending the outcome of an investigation into his involvement in a July 19 assault on a fellow MTCM inmate. The investigation lasted into the following December, and Thompson–El alleged in his first amended complaint that the investigation was a mere pretext for keeping him in administrative segregation. Because the trial court correctly dismissed the case as moot, it did not address the substance of Thompson–El's claims. Absent mootness, we believe Thompson–El's claims might have had some merit, for our review of the record discloses little or no investigative activity for much of the period between July and December. We, of course, do not decide here whether the investigation was unduly delayed or prolonged to provide a pretext for keeping Thompson–El in administrative segregation. We do point out, however, that when an inmate has acquired a constitutionally protected interest in remaining in the general prison population, the fact that an investigation is characterized as "ongoing" will not automatically justify keeping the inmate in administrative segregation. *See Hewitt v. Helms*, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983). Moreover, we think it fair to say that "[t]he lengthier the period of administrative detention, the more likely it may be that [the] investigation' is merely a pretext." *Id.* at 493, 103 S.Ct. 883 (Stevens, J., dissenting). As protection against deprivation of their rights, inmates so confined are entitled to periodic review of their administrative segregation status. *Id.* at 477 n. 9, 103 S.Ct. at 874 n. 9.