Bradley A. DUNLAP, Plaintiff,

v.

CHUBB LIFE INSURANCE COMPANY OF AMERICA, Defendant and Third–Party Plaintiff,

v.

Donn P. BARBER, personal representative of the Estate of Ann L. Dunlap, Third–Party Defendant.

No. CIV. 4–96–1035(JRT/RLE).

United States District Court, D. Minnesota.

June 2, 1997.

Robert S. Abdalian, New Orleans, LA, James M. Crist, Steinhagen & Crist, Edina, MN, for Plaintiff.

Rolf E. Sonnesyn, Tomsche, Sonnesyn & Tomsche, Minneapolis, MN, for Defendant.

Timothy O. Davis, Edina, MN, for Third–Party Defendant.

James A. Moore, Asst. Mpls. City Atty., for the Mpls. Police Dept.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Motion of the Defendant and Third–Party Plaintiff ("Defendant") to Amend its Answer and its Third–Party Complaint, and upon the Plaintiff's Motion to Compel.

A Hearing on the Motions was conducted on May 29, 1997, at which time the Plaintiff appeared by Robert S. Abdalian and James M. Crist, Esqs., the Defendant appeared by Rolf E. Sonnesyn, Esq., the Third–Party Defendant appeared by Timothy O. Davis, Esq., and the Minneapolis Police Department appeared by James A. Moore, Assistant Minneapolis City Attorney.

For reasons which follow, we grant the Motion to Amend, and we direct the Minneapolis Police Department to submit its records, which relate to the investigation of the murder of Anne L. Dunlap, who was formerly the Plaintiff's wife, for our *in camera* review.

### II. *Factual and Procedural Background*

In a Complaint which was filed on October 21, 1996, the Plaintiff commenced this action to compel the payment of death benefits

under a policy that the Defendant had issued on the life of the Plaintiff's wife. By an Answer dated November 12, 1996, the Defendant admitted that a policy had been issued upon the life of the Plaintiff's wife, but alleged that it could neither admit nor deny that, "under the terms of the * * * policy, proceeds are due and payable to [the Plaintiff]," and it denied "any implicit or explicit allegation that [the Defendant] has breached any contractural [sic] obligations." As an affirmative defense, the Defendant's Answer asserted "that the plaintiff's Complaint is not ripe for adjudication because Anne Dunlap died within the two year contestable period set forth in the [life insurance] policy and that [the Defendant] has a contractual right to investigate the validity of Anne Dunlap's status as an insured." At the same time that the Defendant filed its Answer, it filed a Third–Party Complaint against the personal representative of the Estate of Anne L. Dunlap for declaratory, and for injunctive relief.

On May 15, 1997, the Defendant moved for leave to amend both its Answer, and its Third–Party Complaint, in order to specifically allege a number of affirmative defenses to the Plaintiff's claim for life insurance proceeds under the policy in question. In part, the Defendant's proposed Amended Answer would allege as follows:

18. [The Defendant] affirmatively alleges that the [Defendant's] policy, which was issued in response to the application for insurance dated August 18, 1995 * * *, was procured by the Plaintiff's fraud because at the time the [Defendant's] policy was procured, the Plaintiff intended to murder Anne Dunlap. The [Defendant's] policy is therefore void in its inception.

19. [The Defendant] affirmatively alleges that the Plaintiff, in his dual capacity as a[n] * * * insurance agent [of the Defendant] and as the named beneficiary of the [Defendant's] policy, has breached his fiduciary obligations voids the validity of the [Defendant's] policy from its inception.

Accordingly, the Defendant contends that it has no contractual obligation to provide life insurance proceeds to the Plaintiff.

As originally framed, the Defendant's proposed Amended Answer, which contained Counterclaims, alleged a series of fraudulent claims, but without elaboration. In opposition to that attempt to amend, the Plaintiff maintained that the claims of fraud did not comply with the pleading requirements of Rule 9(b), Federal Rules of Civil Procedure, which requires that claims of fraud be alleged with sufficient particularity. In response to that opposition, the Defendant filed an alternative Amended Answer, with Counterclaims—one day before the Hearing [1]— which more specifically alleged a claim of fraud.

Also on May 15, 1997, the Plaintiff moved for an Order which would compel the Minneapolis Police Department to produce its investigative file concerning the murder of Anne L. Dunlap. Earlier, the Plaintiff had served a Subpoena upon the Records Custodian of the Police Department, which had objected to the production of the records that were designated in the Subpoena. According to the Plaintiff, and it is not disputed, the Police Department has been cooperating with the Defendant by furnishing information concerning the Department's investigation of the death of the Plaintiff's wife.

The Plaintiff maintains, and the Defendant does not deny, that, prior to the Defendant's deposition of the Plaintiff, the Defendant had access to certain of the investigative materials which had been generated by the Police Department. The Police Department admits that certain materials were produced for the Defendant's review, and there is no showing that the review was conditioned upon any

---

1. No one would suggest that the Defendant's filing complied with the Local Rules of this Court but, with regularity, we allow the nonmoving party leave to amend a pleading in opposition to a Motion to Dismiss, so as to assure that actions are resolved, to the extent allowable, on the merits of the parties' claims. See, e.g., *West Professional Education Group, Inc. v. Harcourt Brace Legal and Professional Publications, Inc.*, 1995 WL 422651 *12 (D.Minn.1995), citing *Man-gan v. Weinberger*, 848 F.2d 909, 911 (8th Cir. 1988) ("complaint which fails to comply with Rule 8 may be dismissed * * * after allowing time to file an amended complaint"), cert. denied, 488 U.S. 1013, 109 S.Ct. 802, 102 L.Ed.2d 793 (1989). Importantly, we extended an opportunity to the Plaintiff to respond to the belated filings of the Defendant, and the Plaintiff elected to proceed without further written submissions.

agreement that the information would be treated confidentially. Rather, the Department urges that the Plaintiff's request for these investigative materials should be denied unless the Court allows the Defendant to amend its Answer—as the Defendant here seeks to do—in order to assert a "fraud" defense. If such an amendment is allowed, then the Department is willing to produce those portions of its investigative files, which had been shared with the Defendant, so long as those materials are subject to a Protective Order which would limit the review of those materials to the attorneys of record, their staff, and those experts who will be required to consider the materials, and who are willing to be subjected to the proposed Protective Order.

As to this discovery dispute, the Defendant takes no position, while the Plaintiff maintains that the Protective Order, which has been proposed by the Department, is unworkable since it would preclude the Plaintiff from reviewing the Department's files. In response, the Department argues that the recognized interests of the State of Minnesota, as expressed by its legislature, warrants a deliberative, cautious approach to the disclosure of the investigative files of law enforcement agencies. See, *Minnesota Statutes Sections 13.03, Subdivision 6, and 13.82, Subdivision 5.* While acknowledging that the requested information is relevant to the proceedings before the Court—that is, if the Defendant is allowed to amend its Answer—the Department strongly urges a constrictive approach to any disclosure that may be required.

### III. *Discussion*

#### A. *The Defendant's Motion to Amend.*

1. *Standard of Review.* Where, as here, the parties have exchanged their initial round of pleadings, Rule 15(a), Federal Rules of Civil Procedure, describes the appropriate procedure for amending a pleading as follows:

[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires.

In construing this Rule, the Supreme Court has observed:

If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see also, *Thompson–El v. Jones,* 876 F.2d 66, 67 (8th Cir.1989).

"[A]lthough we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on grounds of futility, if the claims created by the amendment would be unable to withstand a Motion to Dismiss." *Ulrich v. City of Crosby,* 848 F.Supp. 861, 877 (D.Minn.1994), and cases cited therein.

In sum, "the right to amend the pleadings is not absolute," and "the granting of a Motion to amend the pleadings is vested in the sound discretion of the Trial Court." *White Consolidated Industries, Inc. v. Waterhouse,* 158 F.R.D. 429, 434 (D.Minn.1994); see also, *Upsher–Smith Laboratories v. Mylan Laboratories,* 944 F.Supp. 1411, 1442 (D.Minn. 1996).

2. *Legal Analysis.* Here, the opponents of the Motion to Amend do not seriously contend that the Defendants are guilty of either "undue delay, bad faith or dilatory motive," nor do they suggest that any prejudice would result if the Defendant's proposed amendments were allowed. Rather, the opposition to the Defendant's Motion was originally premised on the Defendant's failure to obey the command of Rule 9(b), Federal Rules of Civil Procedure, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " 'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained." *Commercial Property v. Quality Inns,* 61 F.3d

639, 644 (8th Cir.1995). Of course, "one of the main purposes of the rule is to facilitate [the opponent's] ability to respond and to prepare a defense to charges of fraud," and "conclusory allegations that a [party's] conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.*

In view of the amendments that the Defendant has last proposed, the Plaintiff, and the Third–Party Defendant, no longer suggest a dismissible insufficiency in the Defendant's allegations of fraud, nor would a claim of inadequacy be well-taken. A plain reading of the proposed amended pleadings reveals that the Defendant is relying upon the rule, which was espoused in *Cerro Gordo Charity v. Fireman's Fund American Life Insurance Company,* 819 F.2d 1471, 1486 (8th Cir.1987), that "a life insurance policy is void ab initio when it is shown that the beneficiary thereof procured the policy with a present intention to murder the insured." Any doubt to the contrary has been resolved by the Defendant's representation, both in its briefing, and in open Court, that no other asserted acts of fraud underlie its attempt to void the policy in question.

Accordingly, we grant the Motion to Amend the Defendant's pleadings.

### B. *The Plaintiff's Motion to Compel.*

■ As the Defendant recognizes, to be successful in this litigation, it must prove that the Plaintiff intended to kill his wife, at the time that he procured insurance from the Defendant, and that the Plaintiff either killed his wife, or caused her to be killed. *Cerro Gordo Charity v. Fireman's Fund American Life Insurance Company,* supra at 1485. As all—including the Minneapolis Police Department—concede, the information garnered in the Department's investigation has obvious relevance to the issues raised by the Plaintiff's claim for the insurance proceeds from the policy he secured on his wife's life. The issue, therefore, is not one of relevance, but one of balancing society's need to protect the integrity of police investigations against the interests of these civil litigants in being fully informed on those facts which could well determine the outcome of this case.

■ In weighing these competing interests, we are closely guided by the Court's reasoning, in *Cerro Gordo Charity v. Fireman's Fund Insurance Co.,* 1985 WL 3067 (D.Minn.1985), where the Court was confronted by this very same issue. There, the City of Minneapolis, and the County of Hennepin, sought to quash a subpoena, which would have required the disclosure of information gathered in an ongoing investigation of a homicide, that was issued in a civil proceeding to recover the proceeds from a policy insuring the life of the homicide victim. There, as here, the insurer contested the validity of the policy on "insurance fraud" grounds. In partially denying the Motion to Quash which, as here, was also premised upon the Minnesota Government Data Practices Act ("Act"), *Minnesota Statutes Sections 13.01, et seq.,* the Court reasoned, in part, as follows:

> There is no reason to believe that the legislature intended the Act to serve as a discovery device through which a criminal suspect could become informed of the details of an ongoing investigation. Such an interpretation could seriously hamper law enforcement efforts. On the other hand, granting of the motion to quash in its entirety would deprive the parties to this litigation of significant evidence associated with eyewitness testimony of the murder scene and the events which took place shortly after [the murder victim's] body was found.

*Id.* at *2.

We are persuaded that the approach employed by the Court, in *Cerro Gordo,* has merit, and we will adopt that approach here, and will require the Minneapolis Police Department to produce all of the materials, that were gathered in its investigation of Anne L. Dunlap's murder, for our *in camera* review.[2]

---

**2.** Although the Department intimates that any disclosures should be limited to the materials which were shared with the Defendant, the Plaintiff's requested production appears to be broader in its scope. Since the Department voluntarily elected to share certain materials with the Defendant without any apparent confidentiality agreement, those materials may not warrant the same degree of protection—if protection of any of the materials is ultimately warranted—than the information that has not been shared with any third party. We are satisfied that, in order to maintain a "level playing field," the materials disclosed to the Defendant must be available to the representatives of the Plaintiff

In that reviewing process, we can, with greater perception, balance "the benefit of disclosure to the civil parties, along with the public's interest in preventing alleged insurance frauds, against the harm that disclosure may cause the [Department's] investigation," *id.*, and we can craft a Protective Order, if one is needed, on a properly informed basis.

NOW, THEREFORE, It is—

ORDERED:

1. That the Defendant's Motion to Amend its Answer, and its Third–Party Complaint [Docket No. 20], is GRANTED.

2. That, forthwith, the Defendant shall file an Amended Answer, and an Amended Third–Party Complaint, which are substantially in conformity with the form and content of those last proposed to the Court, and cause the same to be served upon the parties to this litigation, who shall respond to the same as required by the applicable Federal Rules of Civil Procedure.

3. That a ruling on the Plaintiff's Motion to Compel [Docket No. 17] is deferred until the completion of the Court's *in camera,* review of the materials gathered by the Minneapolis Police Department in the investigation of the death of Anne L. Dunlap.

4. That, forthwith, the Court's calendar clerk will contact counsel for the Minneapolis Police Department in order to schedule a time, date, and location, for the Court's *in camera* review which, to the extent practicable, will accommodate the availability of Sergeant David Voss, who is directed to appear to assist in Court's *in camera* review.

and, perhaps, to the Plaintiff himself. See, e.g., *Tomlin v. Holecek,* 150 F.R.D. 628, 632 (D.Minn. 1993). As a consequence, we further direct that the materials, which were shared with the Defendant, be so designated for the purposes of our review.

Lastly, in order to be fully informed, we direct that Sergeant David Voss ("Voss"), who leads the Department's investigation into the death of Anne L. Dunlap, accompany the Department's investigative materials in order that, *in camera,* he may advise the Court as to any appropriate investigatory "concerns about specific categories of materials and specific documents." *Cerro Gordo Charity v. Fireman's Fund Insurance Co.,* 1985 WL 3067 *1 (D.Minn.1985). Although Voss has expressed the view that "[t]here is no plausible alternative explanation to Anne Dunlap's death other than the conclusion that Bradley Dunlap is the murderer," neither Voss, nor the Department, are parties to this litigation and, while not entirely disinterested parties, their advices to the Court will be considered with an appropriate regard for their perspectives and interests.