**CIVCO MEDICAL INSTRUMENTS CO., INC., Plaintiff,**

v.

**PROTEK MEDICAL PRODUCTS, INC., Defendant.**

No. 4:03–CV–40722.

United States District Court,
S.D. Iowa,
Central Division.

Feb. 4, 2005.

Edmund J. Sease, Jeffrey D. Harty, McKee Voorhees & Sease P.L.C., Des Moines, IA, Thomas R. Johnson, Jeffer Ali, Rachel Clark Hughey, Merchant & Gould PA, for Plaintiff.

Stephen J. Holtman, Simmons Perrine Albright & Ellwood, Cedar Rapids, IA, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO AMEND AND PLAINTIFF'S MOTION TO DISMISS

GRITZNER, District Judge.

Two motions are currently before the Court: Defendant's motion to file a second amended answer and Plaintiff's motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2). A hearing on the motions was held November 22, 2004. Representing Plaintiff CIVCO Medical Instruments Co., Inc. ("CIVCO"), was Jeffer Ali of Merchant & Gould (Minneapolis) and Jeffrey Harty of McKee, Voorhees and Sease (Des Moines). Representing Protek Medical Products, Inc. ("Protek"), was Steve Holtman of Simmons, Perrine (Cedar Rapids).

### I. PERTINENT FACTS

CIVCO was founded in 1981 and specializes in the design and marketing of medical products. Over the years, CIVCO has acquired several patents. Pertinent to this action are two multiple angle needle guide patents, U.S. Patent No. 5,941,889 (" '889") secured in August 1999, and U.S. Patent No. 6,361,499 (" '499") secured in March 2002.

Protek also designs, manufactures, and distributes multiple angle needle guide systems. CIVCO filed this patent infringement lawsuit alleging Protek was infringing on the '889 and the '499 patents.

### II. PROCEDURAL HISTORY

On October 10, 2003, CIVCO filed an infringement action in the United States District Court for the District of Minnesota against Protek. On November 3, 2003, Protek filed a motion to dismiss for lack of personal jurisdiction, and in the alternative a motion to transfer the case to the Southern District of Iowa, Davenport Division. After being granted limited discovery on the issue of personal jurisdiction, CIVCO decided to dismiss the action without prejudice and refile the claim in the Southern District of Iowa. Accordingly, the Minnesota lawsuit was dismissed, and CIVCO filed the present action on December 17, 2003. Protek filed its Answer on April 1, 2004; a scheduling order was entered by the Court on June 10,

2004, specifying, inter alia, the deadline to amend pleadings was August 2, 2004.[1]

In July 2004, CIVCO contacted Protek to discuss terms of a voluntary dismissal with prejudice. Protek's counsel indicated he would contact his client about the proposal. Without any further communication, both parties filed the present motions on July 23, 2004.[2] CIVCO resists Protek's motion to amend, arguing it would be futile because the Court will not have jurisdiction to consider the counterclaim once the infringement claim is dismissed. Protek resists CIVCO's voluntary motion to dismiss, arguing it should not be granted unless Protek is allowed to amend its answer to add a counterclaim of invalidity. Protek also argues it should be awarded attorney fees and costs for this action as well as the previous action CIVCO filed in Minnesota. The parties' arguments for the two motions are corollary; therefore, the Court considers the motions together.

## III. STANDARDS FOR THE MOTIONS

### A. Standard for Motion to Amend

Leave to amend pleadings is granted or denied at the discretion of the trial court. *Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1005 (8th Cir.1996) (citing *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224 (8th Cir.1994)). Amendment should be freely granted, but denial is appropriate if such amendment would be futile. *Id.* "There is no absolute or automatic right to amend." *Williams,* 21 F.3d at 224 (citing *Thompson–El v. Jones,* 876 F.2d 66, 67–68 (8th Cir.1989)). A trial court's decision on a motion to amend will be reviewed for an abuse of discretion. *Id.*

### B. Standard for Rule 41(a) Motion to Dismiss

Rule 41(a)(2) states, in pertinent part,

1. Protek has already amended its answer once, adding more specificity to its affirmative defense of inequitable conduct.

2. Protek electronically filed a motion for leave to file a second amended answer at 12:35 p.m., and CIVCO hand delivered to the Clerk of Court a motion to dismiss with prejudice at 1:56 p.m. Thereafter, counsel began exchanging letters regarding settlement. Protek responded to CIVCO's settlement offer by requesting additional

[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a)(2).

■ " 'It is axiomatic that a dismissal pursuant to Rule 41(a)(2) is not one of right but is rather a matter for the discretion of the trial court.' " *Great Rivers Co-op. of Southeastern Iowa v. Farmland Industries, Inc.,* 198 F.3d 685, 689 (8th Cir.1999) (quoting *United States v. Gunc,* 435 F.2d 465, 467 (8th Cir.1970)). "In exercising that discretion, a court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss, whether a dismissal would result in a waste of judicial time and effort, and whether a dismissal will prejudice the defendants." *Hamm v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.,* 187 F.3d 941, 950 (8th Cir.1999) (internal citations omitted).

■ "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side. Courts generally will grant dismissals where the only prejudice the defendant will suffer is that resulting from a subsequent lawsuit." *Paulucci v. City of Duluth,* 826 F.2d 780, 782 (8th Cir.1987). "Rule 41(a), which, in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an 'adjudication upon the merits' is the opposite of a

terms. CIVCO rejected the additional terms, stating that as its final offer, it would be willing to grant Protek a covenant-not-to-sue, wherein CIVCO unconditionally agreed not to sue Protek for infringement as to any claims of the '889 and '499 patents based upon Protek's Director™ needle guide in its current form. Protek rejected the offer; the parties never reached an agreement.

'dismissal without prejudice.'" *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001); *see also Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir.1999) ("When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a 'final judgment on the merits' for purposes of res judicata.").

## IV. DISCUSSION

Protek argues CIVCO's voluntary motion to dismiss should be denied unless the Court grants Protek's motion to amend to add a counterclaim of invalidity and noninfringement pursuant to the Declaratory Judgment Act. Protek adds that the motion to amend should be granted because it was filed prior to the deadline, and CIVCO would not be prejudiced by the amendment because it would not materially alter any of the issues in the case. Protek resists CIVCO's motion to dismiss to the extent that CIVCO seeks dismissal of Protek's affirmative defenses, counterclaim, and its rights as prevailing party.

CIVCO resists Protek's motion to amend, arguing a counterclaim for declaratory judgment is futile because the motion to dismiss will eliminate the underlying infringement claim, leaving no case or controversy within the meaning of the Declaratory Judgment Act. CIVCO asserts dismissals are freely allowed under Rule 41(a)(2) where the parties are not unfairly prejudiced. CIVCO argues the motion should be granted in the present case since Protek will not be prejudiced.

### A. Case or Controversy Under Declaratory Judgment Act

Whether the amendment is futile, lies in part on the viability of Protek's counterclaim pursuant to the Declaratory Judgment Act (the "Act"). The Act states, in pertinent part,

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

"[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993); *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1340 (Fed.Cir.2001) ("The burden rests on [counterclaim plaintiff] in this case to establish 'that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed.'") (quoting *Int'l Med. Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed.Cir.1986)). In addition, "the Declaratory Judgment Act affords the district court some discretion in determining whether or not to exercise that jurisdiction, even when it has been established." *Cardinal Chem. Co.*, 508 U.S. at 95 n. 17, 113 S.Ct. 1967.

"In general, the presence of an 'actual controversy' within the meaning of the statute depends on 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed.Cir.1996) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988)).

Protek argues this Court has independent jurisdiction over an invalidity counterclaim for several reasons: (1) an actual controversy exists while CIVCO is suing Protek for infringement; (2) although dismissal with prejudice of the infringement claims has a preclusive effect as to the patents involved in this suit, it may not have preclusive effect with regard to future products developed by Protek; and (3) absent a judgment of invalidity, CIVCO will retain the ability to hang its patents over the heads of Protek's customers,

who will understandably not want to use products that may be infringing on CIVCO's patents. Relying on *Cardinal Chemical,* Protek also argues a declaratory judgment counterclaim remains viable even in the absence of an infringement claim.

The principle set forth in *Cardinal Chemical* is not germane to the issue in the present case. In *Cardinal Chemical,* the issue before the court was whether a counterclaim of invalidity was rendered moot by a finding of noninfringement. *Cardinal Chem.,* 508 U.S. at 85–86, 113 S.Ct. 1967. In that case, the plaintiff brought a patent infringement action, and the defendant filed a counterclaim for declaratory judgment of invalidity. *Id.* Following a bench trial, the district court found noninfringement and granted defendant a declaratory judgment of invalidity. *Id.* at 86, 113 S.Ct. 1967. The plaintiff appealed. *Id.* at 87, 113 S.Ct. 1967. The Federal Circuit affirmed the district court's finding of noninfringement and vacated the declaratory judgment of invalidity, explaining " '[s]ince we have affirmed the district court's holding that the patents at issue have not been infringed, we need not address the question of validity.' " *Id.* (quoting *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 959 F.2d 948, 952 (1992)). The Supreme Court granted certiorari to address the Federal Circuit's longstanding practice of routinely vacating declaratory judgments of invalidity when there was a finding of noninfringement. *Id.* at 91–92, 113 S.Ct. 1967 (citing *Vieau v. Japax, Inc.,* 823 F.2d 1510, 1511–12 (Fed.Cir.1987), and *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 630 (Fed.Cir.1987)).

The Supreme Court clarified that the Federal Circuit retains jurisdiction to consider an invalidity claim even after a finding of noninfringement. *Id.* at 96, 113 S.Ct. 1967. The Court reasoned, when "the District Court has jurisdiction (established independently from its jurisdiction over the patentee's charge of infringement) to consider that claim, so does (barring any intervening events) the Federal Circuit." *Id.* The Supreme Court went on to reason that "while the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, absent further information, that jurisdiction continues." *Id.* at 98, 113 S.Ct. 1967.

While *Cardinal Chemical* confirms that the case or controversy requirement of the Declaratory Judgment Act may be satisfied and declaratory judgment may be sought independent of an infringement action, it also confirms that the party requesting a declaratory judgment has the burden of proving justiciability. *Id.* at 96–98, 113 S.Ct. 1967. In the present case, the question before the Court is not whether Protek's counterclaim of invalidity is "mooted" by the dismissal of CIVCO's case in chief; therefore, *Cardinal Chemical* is not helpful to Protek's argument. First, Protek does not already have a counterclaim for declaratory judgment on record. The proposition that the court *retains* jurisdiction to consider an invalidity claim as set forth in *Cardinal Chemical,* presumes there *is* an invalidity claim.[3] Second, as stated in *Cardinal Chemical,* a court's maintenance of a counterclaim rests on its jurisdiction to entertain the claim *independent* of the infringement claim. *Id.* at 96, 113 S.Ct. 1967 ("It is equally clear that the Federal Circuit, even after affirming the finding of noninfringement, had jurisdiction to consider [defendant]'s appeal from the declaratory judgment of invalidity. A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement."). Accordingly, there must be an independent basis of juris-

---

**3.** In *Cardinal Chemical,* the Court similarly distinguished that an *affirmative defense* of invalidity was not the same as an invalidity *counterclaim. Cardinal Chem.,* 508 U.S. at 93–94, 113 S.Ct. 1967 (citing *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1939)). "An unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment." *Id.*

By way of analogy, the case at bar does not *involve* a counterclaim of invalidity because there was no counterclaim at the time the motion to dismiss was filed. In fact, despite having previously filed motions to amend its answer, Protek did not seek to add a counterclaim until CIVCO indicated it was going to voluntarily dismiss the action.

diction over Protek's invalidity claim regardless of the status of CIVCO's infringement claim. Third, the holding in *Cardinal Chemical* does not touch on a party's right to add a counterclaim in the face of a voluntary motion to dismiss the case in chief. Fourth, and more importantly, if the Court has jurisdiction to consider an invalidity claim independent of the infringement claim, dismissing the infringement action does not preclude Protek from bringing a separate declaratory judgment action.[4]

Protek next argues that a counterclaim of noninfringement should be allowed because it has reasonable apprehension that it will face an infringement suit by CIVCO in the future based on the patents-in-suit. It is Protek's contention that neither the motion to dismiss nor the offered Covenant preclude suit against its current or future products other than the Director™ needle guide. Protek alleges CIVCO's final settlement evinces that even minor modifications to the Director™ would subject it to suit.[5] Protek also argues another reason to believe there is a threat of litigation is because CIVCO and its counsel are aware Protek has designed several modifications to the Director™ and sold those prototypes to customers. Accordingly, Protek asserts there is reason for apprehension of future litigation.

CIVCO argues there is no controversy because it has not only abandoned its infringement claim, but it has also offered Protek a covenant not to sue.[6] The Covenant states, "CIVCO Medical Instruments Co., Inc., here-by unconditionally agrees not to sue Protek Medical Products, Inc. ('Protek') for infringement as to any claims of United States Patent Nos. 5,941,889 and 6,361,499 based upon Protek's Director™ needle guide as it exists in its current form as described and illustrated on Protek's website." CIVCO argues that in light of the Covenant, this Court is divested of jurisdiction. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1056 (Fed.Cir.1995).

The Federal Circuit conducts a two-part inquiry to determine whether a real controversy exists when a declaration of noninfringement or invalidity has been requested. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir.1996). "First, the plaintiff must actually produce or be prepared to produce an allegedly infringing product. Second, the patentee's conduct must have created an objectively reasonable apprehension on the part of the plaintiff that the patentee will initiate suit if the activity in question continues." *Id.*

In *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, plaintiff brought a patent infringement action, and defendant filed a counterclaim for invalidity and noninfringement. *Super Sack Mfg. Corp.*, 57 F.3d at 1055. Eventually, plaintiff Super Sack indicated it was no longer interested in pursuing its infringement claim, but before Super Sack filed the voluntary motion to dismiss, defendant Chase moved to amend its pleading to assert a counterclaim of inequita-

---

4. Protek also cites *Kudlacek v. DBC, Inc.*, 115 F.Supp.2d 996, 1073–77 (N.D.Iowa 2000), a case in which the district court was required to determine whether a finding of noninfringement mooted a counterclaim of invalidity. Applying the rule set forth in *Cardinal Chemical*, the *Kudlacek* court reasoned, "[t]his court had independent jurisdiction over [defendant]'s counterclaim asserting the invalidity of the [ ] patent, and this court 'is entitled to presume, absent further information, that jurisdiction continues.'" *Id.* at 1075 (quoting *Cardinal Chem.*, 508 U.S. at 98, 113 S.Ct. 1967). As with *Cardinal Chemical*, the invalidity counterclaim in *Kudlacek* existed before the non-infringement determination was made. *Id.*

5. The offer letter states in pertinent part, "While CIVCO continues to believe that [Protek's] product literally infringes the patents-in-suit, from a business standpoint, CIVCO believes that it makes little sense to proceed forward with this litigation." Protek asserts that the only reason CIVCO seeks a dismissal with prejudice is that the damages as the result of the infringement are insufficient to proceed with the suit.

6. CIVCO further asserts the appropriateness of denying Defendant's motion to amend in the face of dismissal of all pending claims is not unique in patent law. *See, e.g., Wald*, 83 F.3d at 1005 (denying plaintiff's motion to amend because relief sought in amended complaint was not available); *In re Am. Commercial Lines, Inc.*, 781 F.2d 114, 116 (8th Cir.1985) (finding that once all pending claims against defendant had been dismissed, defendant's counterclaim pursuant to the Declaratory Judgment Act had to be dismissed because "no actual controversy" remained).

ble conduct. *Id.* Super Sack filed its motion to dismiss the infringement claims pursuant to Rule 41(a) and stated, "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056–57. Defendant resisted the motion. *Id.* at 1057.

Without conceding its claim of infringement, Super Sack promised not sue for infringement on the patents-in-suit with respect to any products that were currently manufactured or sold by Chase. *Id.* The court clarified that this promise did not extend to products first made, used, or sold *after* the motion to dismiss had been filed and granted the motion to dismiss. *Id.* The court dispensed with defendant's counterclaims for lack of subject matter jurisdiction, reasoning that under the conditions of the covenant, the Rule 41(a)(2) motion was proper. *Id.*

Chase appealed the decision, contending Super Sack's promise not to sue was not memorialized in a covenant and was too indefinite to "estop Super Sack from again suing Chase on the [patents-in-suit] as to past and present products and fails to cover future products at all." *Id.* Chase further argued this uncertainty left a sufficient controversy intact to ground jurisdiction over the counterclaim. *Id.*

The Federal Circuit affirmed the district court, reasoning the burden was on Chase to " 'establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed.' " *Id.* (quoting *Int'l Med. Prosthetics Research Assocs.,* 787 F.2d 572, 575 (Fed. Cir.1986)). The court went on to say, "a patentee ... can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts, even when a reissue application covering the same claimed subject matter is then pending." *Id.* at 1058.

Protek dismisses the significance of *Super Sack* and argues *Cardinal Chemical* is controlling in the present case. As previously stated, this Court finds *Cardinal Chemical* is inapplicable to the case at bar. Furthermore, Chase made the same argument in *Super Sack,* and the Federal Circuit similarly found it unpersuasive. *Id.* at 1060.

> In other words, according to *Cardinal,* a claim for a declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following—and only the following—way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity. *Id.* The instant case comes to us in a posture far removed from the one scrutinized in *Cardinal:* here, the trial court neither made a finding on infringement nor reached a conclusion on validity. *Cardinal,* addressed to the propriety of appellate jurisdiction over final judgments respecting infringement and validity, simply does not apply.

*Id.*

Protek next attempts to distinguish the present case from *Super Sack,* arguing the Covenant will not stop CIVCO from asserting infringement claims on the same patent against *future* modifications to the Director™, and therefore the Court has jurisdiction over its counterclaim. Despite Protek's attempt to distinguish itself, the same argument was asserted and failed in *Super Sack:* "The residual possibility of a future infringement suit based on [defendant]'s future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity. The only proper course for the trial court was to dismiss the case for lack of jurisdiction, as it did." *Id.* at 1060.

Protek's final argument is that it has prototypes, already developed and known to CIVCO's counsel, and possibly CIVCO itself, that have been shown and sold to customers, that would not be protected from an infringement suit. This argument is similarly ineffective since CIVCO concedes that "while Protek may have some cause to fear an infringement suit under the '889 and '499 patents based on products that it may develop in the future, Protek has no cause for concern that it can be held liable for any

infringing acts involving needle guide products that it made, sold, or used on or before August 2, 2004." [7] Accordingly, the Court concludes the prototypes as they existed on August 2, 2004, are covered under the Covenant. Although a product developed in the future may not be covered by the Covenant, fear of liability on a future product is not justiciable under the Act.

Based on the arguments presented, it appears Protek fails the first part of the justiciability test because it cannot show that there is an explicit threat. *Cardinal Chem.*, 508 U.S. at 96, 113 S.Ct. 1967; *Super Sack*, 57 F.3d at 1058 ("There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.") (citing *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993)).

Protek's assertion that the Court *retains* jurisdiction over a counterclaim is inaccurate since there is no counterclaim of invalidity currently pending. Furthermore, an invalidity claim requires an independent basis of jurisdiction, *Cardinal Chem.*, 508 U.S. at 96, 113 S.Ct. 1967; therefore, neither denying the motion to amend nor dismissing the infringement action prevents Protek from filing a declaratory judgment action with a justiciable claim. Although Protek's argument that it is not protected against future product modifications suggests its claims are too speculative to satisfy the justiciability requirement of the Declaratory Judgment Act, *Super Sack*, 57 F.3d at 1055, the Court need not make such a determination under the circumstances. The Court today only decides the case at bar. The Court denies Protek's motion to amend and makes no finding regarding the justiciability of an invalidity claim.[8]

## B. Costs and Fees Pursuant to Rule 41(d)

The final matter before the Court is the issue of costs pursuant to Federal Rule of Civil Procedure 41(d) ("Rule 41(d)"). As a condition of dismissal, Protek argues it should be awarded the costs, including attorney fees, pursuant to Rule 41(d), for the action CIVCO previously filed and dismissed in Minnesota. Protek asserts that attorney fees are considered costs under Rule 41(d) in the Eighth Circuit. *See Behrle v. Olshansky*, 139 F.R.D. 370, 375 (W.D.Ark.1991) (reasoning in that case litigation had been going on for more than a decade, and attorney fees were appropriate under Rule 41(d) because the defendant had incurred substantial costs due to plaintiff's procedural maneuvering which included asking for a remand, then nonsuiting the case after the third day of trial in state court and refiling the same claims the next day in federal court); *Evans v. Safeway Stores, Inc.*, 623 F.2d 121, 122 (8th Cir.1980) (affirming the district court's award of $200 under Rule 41(d) to defendant in an action that was pending for sixteen months when plaintiff moved to voluntarily dismiss and then re-filed her complaint).[9] Protek further argues CIVCO had no evidence that Protek made, used, offered to sell, or sold any accused products in Minnesota

7. CIVCO made this important clarification in its reply brief, and the issue was specifically pursued by the Court at oral argument to confirm with counsel for Protek that the Court, and CIVCO, could rely on this explanation of the scope of the Covenant; and, the Court does rely upon this representation in reaching the conclusions in this order.

8. CIVCO also argues Protek's motion to amend should be stricken under Local Rule 1.1(f) because Protek failed to comply with Local Rule 7.1(k) by not conferring with CIVCO prior to filing its motion to amend. Local Rule 1.1(f) provides that for noncompliance with the Local Rules, the Court may sanction a party by striking

its pleadings. The Court is denying Protek's motion to amend for the reasons stated above and does not reach the issue of sanctions for noncompliance with the Local Rules.

9. Protek also cites *Esquivel v. Arau*, an opinion from the Central District of California which provides a comprehensive discussion of costs under Rule 41(d). *Esquivel v. Arau*, 913 F.Supp. 1382, 1388–92 (C.D.Cal.1996). The *Esquivel* court concluded "defendants are entitled to both expenses and attorneys' fees that are reasonably incurred and that will not contribute toward defendants' defense in the present case." *Id.* at 1392.

and that it should not have to bear the burden of that wholly unnecessary litigation.

CIVCO argues attorney fees are not costs under Rule 41(d) as the court found in *Simeone v. First Bank Nat'l Ass'n*, 125 F.R.D. 150, 155 (D.Minn.1989).

> The Court is satisfied based upon its own research and a review of the cases cited by defendants that attorneys' fees are not recoverable as part of 'costs' under Rule 41(d). The language of Rule 41(d) speaks only generally of payment of 'costs' and does not specifically mention attorneys' fees. Ordinarily, attorneys' fees are not taxable as costs. *See Wheeler v. Durham City Board of Education*, 585 F.2d 618, 623 (4th Cir.1978); C. Wright & A. Miller, Federal Practice and Procedure § 2675. Title 28 U.S.C. § 1920, which lists items a court may tax as costs, does not refer to attorneys' fees. Several of the Federal Rules of Civil Procedure explicitly provide for recovery of attorneys' fees. *See* Fed. R.Civ.P. 30(g)(2), 37(a)(4), 37(b), 37(c), 37(d), 56(g). Thus, Congress knew how to provide for recovery of attorneys' fees, and its failure to so provide in Rule 41(d) suggests that attorneys' fees are not to be considered as part of 'costs' for purposes of a Rule 41(d) motion. For all these reasons, the Court will decline to include attorneys' fees under any award of costs made pursuant to Rule 41(d).

*Id.* CIVCO further asserts *Simeone* is binding authority in the Eighth Circuit because it was affirmed on appeal. *Simeone v. First Bank Nat'l Ass'n*, 125 F.R.D. 150 (D.Minn. 1989) *aff'd*, 971 F.2d 103 (8th Cir.1992).

CIVCO also contends the lack of specific mention of attorney fees in Rule 41(d) as compared to other rules of civil procedure which explicitly provide for recovery of attorney fees strongly suggests Congress knew how to provide for recovery of attorney fees and chose not make them available under Rule 41(d). *See, e.g.,* Fed.R.Civ.P. 30(g)(2), 37(a)(4), 37(b), 37(c), 37(d), 56(g). *See also Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir.2000) (recognizing a split in authority on whether attorney fees are "costs" under rule 41(d), and concluding they are not, stating "[t]he reason is simple—the rule does not explicitly provide for them"); *Lawson v. Toney*, 169 F.Supp.2d 456, 466 (M.D.N.C.2001) ("In the present case, Defendant Toney is seeking to include attorney's fees within the award of costs. However, because the plain language does not explicitly provide for attorney's fees, 'costs' under Rule 41(d) do not include attorney's fees.").

Rule 41(d) states:

> (d) Costs of Previously–Dismissed Action. If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Fed.R.Civ.P. 41(d). "[Rule 41(d)] is permissive in nature and does not require the issuance of an automatic stay. The purpose of the rule is to prevent vexatious suits and to secure the payment of costs." *Simeone*, 125 F.R.D. at 155 (internal citations omitted). "Costs" generally do not include attorney fees. *See Behrle*, 139 F.R.D. at 373 n. 1 ("In the United States, contrary to the practice in England, it has been the custom to require litigants to assume the burden of paying for their own litigation connected legal services in the absence of a rule or statute to the contrary. Thus, counsel fees ordinarily are not taxable as costs.") (quoting 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure, § 2666 (2d Ed.1983)).

■ The decision to grant or deny attorney fees under Rule 41(d) is reviewed for an abuse of discretion. *Evans*, 623 F.2d at 122. Some district courts have found an award of attorney fees is also appropriate when the previously dismissed action involved protracted litigation. *See Esquivel v. Arau*, 913 F.Supp. 1382, 1388–92 (C.D.Cal.1996) (discussing several cases where the previous litigation lasted several months or years before plaintiff voluntarily dismissed the action).

The Court disagrees that *Simeone* is "controlling" in the Eighth Circuit on the issue of whether attorney fees are costs under Rule

41(d). In that case, the Eighth Circuit merely affirmed without comment the district court's decision regarding fees and costs. *Simeone,* 971 F.2d at 104 ("Simeone also appeals the district court's order awarding defendants fees and costs associated with a previous state court proceeding initiated by Simeone and dismissed without prejudice. We affirm the district court on this issue."). Although there is a lengthy discussion regarding the award of attorney fees within the district court's opinion, only expert witness fees were at issue in the appeal. This Court does not read the appellate case as having affirmed the District Court on an issue not raised on appeal.[10]

Similarly, the Court does not find *Evans* is controlling on the issue. In *Evans,* the district court awarded $200.00 for "attorney's" fees to the defendant after the plaintiff moved to dismiss her complaint without prejudice sixteen months after filing suit and then proceeded to refile the complaint. *Evans,* 623 F.2d at 122. In a per curiam opinion, the Eighth Circuit affirmed, reasoning, "[a]fter considering the motion and affidavit in support thereof and plaintiff's opposition thereto, the district court awarded defendant-appellee $200 as an allowance for preparation in the initial cause. We are satisfied the district court did not abuse its discretion in awarding defendant-appellee $200 attorney fees." *Id.* The language of that very brief per curiam opinion simply does not provide a basis upon which the Court is willing to conclude the Eighth Circuit was establishing a policy on the issuance of attorney fees under rule 41(d). The Circuit Court does not specifically base its decision upon the rule, but rather with a general reference to an "allowance for preparation," which may arise independently from any authority under Rule 41(d).

■ While the Court is not persuaded that either *Simeone* or *Evans* represent the holding of the Eighth Circuit on the issue of awarding attorney fees under Rule 41(d), the Court is persuaded that the general rule regarding attorney fees applies. That is, "absent express statutory authority, bad

faith or willful disobedience of a court order, each party should bear the cost of its own attorneys' fees." *Esquivel,* 913 F.Supp. at 1388 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259–60, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). None of those enumerated conditions is present in this case.

■ CIVCO argues costs under Rule 41(d) are not even merited in the present case because such an award is meant to deter forum shopping and vexatious litigation, neither of which are present here. *Simeone,* 971 F.2d at 108. CIVCO asserts the Minnesota action was filed with the good faith belief that Protek offered medical products for sale in Minnesota, but it dismissed the Minnesota action and refiled the lawsuit in Iowa to avoid protracted litigation over personal jurisdiction. Accordingly, CIVCO argues costs are not mandated under Rule 41(d), and the Court should not award them to Protek since there was good reason for dismissing the prior action. *Zucker v. Katz,* 708 F.Supp. 525, 539 (S.D.N.Y.1989) ("As a general rule, courts 'may refuse to make this requirement if it appears that there was a good reason for the dismissal of the prior action or that the plaintiff is financially unable to pay the costs.'") (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2375 at 244 (1971)).

The Court finds that the circumstances of this case do not warrant the award of attorney fees or costs. The previous action in the District of Minnesota was pending for only two months. When CIVCO was faced with a motion to dismiss for lack of personal jurisdiction, it resolved the matter by conducting very brief jurisdictional discovery, negotiating a voluntary dismissal, and refiling the claim in Iowa. By doing so, CIVCO avoided unnecessary litigation. Despite Protek's depiction to the contrary, CIVCO reacted reasonably quickly and efficiently. The Court is not persuaded CIVCO was being vexatious or trying to create unnecessary cost and inconvenience by filing the action in Minneso-

---

10. It would seem extraordinary that the Circuit Court would establish so significant a legal principle by affirming the District Court without comment.

ta. Under the circumstances of this case, costs under Rule 41(d) are not warranted.

## V. CONCLUSION

For the foregoing reasons and as previously stated, the Court rules as follows: Defendant Protek's motion to amend (Clerk's No. 50) must be **denied**; Protek's request for costs including fees under Rule 41(d) must also be **denied**. Plaintiff CIVCO's motion to dismiss with prejudice (Clerk's No. 51) is **granted**. This disposition results in total dismissal of the action.

**IT IS SO ORDERED.**